Van Voorhis, J.
Hudson Boulevard East Land Corporation owed defendant $15,000 for professional engineering services. It had planned to erect a building on a parcel of land which it owned in West New York, New Jersey. As was stated by the trial court:
“ The project limped along at a pace unsatisfactory to the stockholders, and it was decided to sell the corporation, it being contemplated that several stockholders would collectively divest their stockholdings to another group of builders or speculators who would erect the planned building utilizing the projected blueprints.
‘ ‘ The plaintiff stockholder was not sympathetic to these decisions, and he secured a written option to purchase the interests of the other stockholders for $250,000. One of the provisions of the option agreement provided: ‘ that the corporation shall continue to have the obligations to pay to Samuel Roberts the sum of $15,000.00 in consideration of his work, labor and services performed on behalf of the said corporation which sum shall be paid within ten days following the first advance of mortgage funds under the construction loan following commencement of construction.’ ”
During the option period, instead of developing this land through the corporation, plaintiff arranged to resell it to another developer for $350,000 and a 49% equity interest in himself, and he thereupon exercised his option which placed him in position to become sole stockholder of the corporation. Upon acquiring the shares of the other stockholders, and taking their general releases to the corporation and himself, plaintiff came into position where he could deal with the property of the corporation as though it were his own, subject to rights of creditors and of the public (Diamond v. Diamond, 307 N. Y. 263; Kent v. Quicksilver Min. Go., 78 N. Y. 159).
He chose to depart from the method of development of this land in New Jersey which had been contemplated by the terms of the option under which the other shareholders including defendant agreed to sell him their stock, by causing the land to be transferred to him and then to the other developer instead of having the Hudson corporation itself build upon the land. This change in plan frustrated the provision made in the option agreement for the payment to defendant by the corporation of its *73 existing indebtedness to him of $15,000 “ within ten days following the first advance of mortgage funds under the construction loan following commencement of construction ’ ’ by Hudson. Plaintiff had the corporation deed this land to himself without consideration, thus denuding it of assets without payment of its debt to defendant except as plaintiff paid it personally by the cash and note which plaintiff now claims were delivered under duress. Plaintiff, in turn, deeded it to the other developer. If defendant had not been paid by plaintiff, this departure from the pattern of the option agreement would have left the corporation without funds to pay its indebtedness to defendant, and would have enabled plaintiff personally to capitalize on the assets of the corporation without being chargeable with payment of its indebtedness.
Defendant foresaw what plaintiff was about to do and prevented it before it occurred. He was himself a shareholder as well as a creditor of the Hudson corporation, and a signer of this option agreement. When his turn came to transfer his shares to plaintiff, and deliver his general release to plaintiff and the corporation, he pointed out that, in view of the conveyance of this land through plaintiff to the other developer, the Hudson corporation would be left without funds to pay its indebtedness to him of $15,000, which the option agreement had provided would be paid within 10 days following the first advance of mortgage funds following commencement of construction by Hudson of a building on the land. He refused to transfer his stock to plaintiff, or to release plaintiff and the corporation in the light of this departure from the program of the option agreement, unless plaintiff personally paid to him this debt of the Hudson corporation. Plaintiff did so by delivering to defendant $10,000 in cash and his note for the balance of $5,000. Defendant thereupon transferred his shares to plaintiff for the price stated in the option, and delivered to plaintiff his general release running to plaintiff and the corporation. Plaintiff now sues defendant for the return of this $10,000 and the cancellation of his note for $5,000 upon the theory that they were exacted from him by the defendant by means of duress, which would, as defendant foresaw, leave him without means of collecting his $15,000 debt from the corporation.
*74 The theory underlying this assertion of duress is that, at the time when defendant insisted upon the payment by plaintiff of this obligation of the Hudson corporation, defendant was already under legal obligation to sell and transfer his stock to plaintiff and to release plaintiff and the Hudson corporation from all claims, except payment by the corporation of the said $15,000 at the time and in the manner specified in the option agreement. It is said that the defendant took strategic advantage of the favorable opportunity which plaintiff had to resell this land for $350,000 and a 49% equity interest, by exacting payment of this corporate debt by plaintiff personally, citing such cases as Harmony v. Bingham (12 N. Y. 99,116-117); Scholey v. Mumford (60 N. Y. 498); McPherson v. Cox (86 N. Y. 472); Adrico Realty Corp. v. City of New York (250 N. Y. 29, 33), and Zinser v. Matthews Development Corp. (280 App. Div. 827), holding that duress may be found in the refusal to deliver tangible property or documents in violation of an existing legal obligation to do so.
That is not this situation. It was not duress but simple justice for defendant to insist upon payment by plaintiff of the $15,000 indebtedness of the corporation to defendant, as a condition of transferring his stock and giving the general release, in view of plaintiff’s announced intention of abandoning the procedure provided by the option agreement, which threatened to render and did render the Hudson corporation judgment proof through the transfer of its assets to plaintiff and by plaintiff to the other developer. Defendant had the right to insist upon performance of the option agreement according to its terms if he were to be obliged to sell and transfer his stock and give a general release. He was not seeking a windfall but was endeavoring to protect himself against the crafty contrivance of plaintiff, who sought to lay hands on the entire profit from the sale of this real property of the corporation without making the provision contemplated for the payment of its indebtedness to defendant. Plaintiff has even argued that defendant, in effect, cancelled this indebtedness from the corporation and is never entitled to be paid, on the theory that by signing the option agreement defendant changed his position from an absolute creditor of the corporation to a contingent creditor, contending that the option agreement provides that defendant is never to be paid unless the Hudson corporation obtains a building loan on this real estate in New Jersey, which plaintiff has rendered it powerless to do.
*75 It is incorrect to consider that this option agreement imposed an obligation on defendant to sell and transfer his stock and deliver this general release notwithstanding that plaintiff proposed, in effect, to violate the option agreement unilaterally by departing from its terms in such manner as to render the corporation judgment proof and its indebtedness to defendant no longer payable.
Defendant would have been entitled under the language of the option agreement to have insisted that this real property be held by the corporation for the construction of the contemplated buildings. That being so, he had the right to insist upon payment by plaintiff as a condition of letting plaintiff deal with the corporate property as though it had been his own. He abandoned the right to object, on payment of this indebtedness by plaintiff. Having thus obtained the stock and general release from the defendant, plaintiff now seeks to annul the payment on the basis of which it was done. The law contemplates fair dealing and not its opposite. Persons invoking the aid of contracts are under implied obligation to exercise good faith not to frustrate the contracts into which they have entered. The rule is grounded in many cases that in every contract there is an implied undertaking on the part of each party that he will not intentionally and purposely do anything to prevent the other party from carrying out the agreement on his part (Patterson v. Meyerhofer, 204 N. Y. 96,100-101; Matter of Casualty Co. [Bliss Co. Claim], 250 N. Y. 410, 419; Amies v. Wesnofske, 255 N. Y. 156, 162-163; Wagner v. Derecktor, 306 N. Y. 386, 391). In suing for duress, plaintiff charges defendant with bad faith in refusing to sell and transfer his stock and give a general release in accordance with the terms of the option; upon the other hand, and more convincing, we think, is the circumstance that defendant manifested no unwillingness to do that if plaintiff were to have had the Hudson corporation continue with the development of this real property, as the option agreement contemplated, instead of rendering the corporation a hollow shell by the transfer to him of its real property, so that he could profit exclusively by its sale without leaving anything in the corporation to defray its admitted indebtedness to defendant, and even then contending that this choice of procedure on plaintiff’s *76 part, in derogation of the obligation of the corporation to pay to defendant, resulted in the legal extinction of this debt. He manifestly aimed himself to benefit by the sale of the assets of the corporation without deduction for the payment of its just debt. If the performance of the option agreement by defendant was frustrated by anybody, that was done by plaintiff through his manipulation of the corporate affairs as sole stockholder. Defendant became aware of this departure from the provisions of the option agreement in time to protect himself, and did not render himself liable to an action in duress for having done so. As an officer, director and sole stockholder of the Hudson corporation, plaintiff could not legally have caused its property to be transferred to himself in derogation of the rights of creditors. Neither could he override the corporate entity, insofar as he was concerned, by receiving a deed of its assets as sole stockholder and at the same time utilize the corporate entity to prevent payment of defendant’s claim. Defendant is not chargeable with duress for having insisted that if plaintiff were to take over personally the assets of the corporation he must assume the indebtedness of the corporation, or for having demanded and received payment from plaintiff of this corporate indebtedness instead of insisting upon his right under the option agreement to have the real property retained and developed by the Hudson corporation as the option agreement indicated would he done.
The judgment of the Appellate Division should be reversed and that of Trial Term reinstated, with costs in this court and in the Appellate Division.
Chief Judge Desmond and Judges Dye, Fuld, Burke, Scileppi and Bergan concur.
Judgment reversed, etc.