**In re METCO MINING
AND MINERALS,
INC., Debtor.**

**METCO MINING AND MINERALS,
INC., Plaintiff,**

v.

**PBS COALS, INC., Defendant.**

**Bankruptcy No. 93–21638–BM.
Motion No. 94–674M.
Adv. No. 93–2356–BM.**

United States Bankruptcy Court,
W.D. Pennsylvania.

Aug. 31, 1994.

Mark A. Gregg, Johnstown, PA, for debtor/plaintiff MetCo Mining and Minerals, Inc.

Vincent J. Barbera, Barbera & Barbera, Somerset, PA, for defendant PBS Coals, Inc.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Several matters are before the court at this time.

Debtor MetCo Mining And Minerals, Inc. (hereinafter "debtor") has brought a complaint against PBS Coals, Inc. (hereinafter "PBS") at Adversary No. 93–2356–BM in which it seeks to recover the sum of $81,942.03 for coal sold to PBS for which PBS has not paid.

PBS has responded with a counterclaim against debtor wherein it seeks a judgment against debtor in the amount of $458,945.85. PBS seeks to set off or to recoup the amount which it owes to debtor against the amount it seeks to recover on its counterclaim.

Also, PBS has filed a proof of claim in the amount of $456,786.76 which is essentially the same as its counterclaim and includes an asserted set off in the amount of $81,942.03.

Debtor has objected to the proof of claim on the same grounds as it opposes PBS's counterclaim.

For reasons set forth below, PBS will be permitted to set off the pre-petition debt it owes to debtor against the claims asserted in its counterclaim. In addition, PBS's proof of claim will be allowed in the amount of $381,075.18.

## –I–

### FACTS

Debtor is in the business of mining coal in Somerset County, Pennsylvania.

PBS is in the business of selling coal to industrial customers.

On August 28, 1983, PBS and Robert Ankeny entered into an agreement wherein PBS leased a tract of land located in Somerset County, Pennsylvania, for the purpose of mining coal therefrom for an initial term of ten (10) years. PBS agreed in paragraph 3 to pay Ankeny a royalty in accordance with a specified formula for coal mined from the site and agreed in paragraph 11 to comply with all applicable federal and state laws and regulations pertaining to the use of the premises and the mining of coal.

Paragraph 12 of the agreement provided as follows:

. . . Lessee shall be solely liable for compliance with all the laws of the United States and of the Commonwealth of Pennsylvania and of any other proper authority relating to the mining of coal . . .; and Lessee shall protect, indemnify and save harmless Lessor from any and all liability for and on account of the aforesaid matters. . . .

Paragraph 17 of the agreement provided as follows:

This agreement shall be subject to assignment or sublease to any company, corporation, partnership, or any other business entity. However, in the event of assignment or sublease, Lessee shall remain liable for the payment of all royalties and other monies to be paid hereunder and for compliance with all terms, covenants and conditions herein as required from Lessee. . . .

On August 15, 1986, debtor and PBS entered into an agreement wherein PBS assigned to debtor all of its rights under the Ankeny lease. The assignment contained the following provision:

Assignee promises and agrees that it shall keep and perform each and every item, condition and requirement contained within the lease as if it had been an original party thereto. Further, Assignee agrees that it shall indemnify and save harmless Assignor from any and all claims, demands, liabilities, actions and causes of action arising out of Assignee's possession of the Lease, including without limitation, reclamation and environmental requirements.

On August 25, 1986, ten (10) days after execution of the assignment, debtor and PBS executed a document entitled "First Right Of Refusal And Agency Agreement". Debtor granted PBS in paragraph 1 the "first right" to buy as much of the coal debtor produced at the Ankeny site as PBS desired. Debtor designated PBS in paragraph 6 as its agent with respect to coal it sold to third parties. PBS was authorized to receive payment from third parties for coal purchased and to deduct therefrom all monies due and owing to PBS from debtor under the assignment and to deduct a one percent (1%) override royalty from the sale price paid by third parties.

Paragraph 11 of the agreement provided as follows:

METCO shall protect and save harmless PBS from any liability on any claim whatsoever of any nature whatsoever to persons or property or breach of contract, provided, however, that this provision shall not be construed to release PBS from any payments due by PBS to METCO by the terms of the Agreement.

On August 23, 1989, PBS and Lee and Theresa College entered into an agreement wherein PBS leased a tract of land in Somerset County for the purpose of mining coal from the site for an initial term of five (5) years.

PBS agreed in paragraph 3 to pay the Colleges a minimum royalty of $1,000.00 per month during the term of the lease and agreed in paragraph 14 to pay the Colleges a royalty of ten percent (10%) of the gross selling price per ton of coal mined or $2.00 per ton, whichever was greater.

PBS agreed in paragraphs 10 and 11 to comply with all federal and state environmental laws and regulations pertaining to the use of the premises and the mining of coal.

Paragraph 16 of the agreement, was virtually identical to paragraph 17 of the lease agreement with Ankeny, wherein assignment was acceptable; however, in that event PBS would remain liable to the Lessors for royalties as well as compliance with all of the other terms and conditions of the lease.

On March 9, 1992, debtor agreed to reimburse PBS the sum of $63,500.00 which PBS had expended in engineering and drilling costs in connection with the College site and in advance royalty payments to the Colleges. Pursuant to the agreement, debtor was to pay to PBS the sum of $5,000.00 upon receiving the request of the Pennsylvania DER (Department of Environmental Resources) that debtor post a bond for the College site. In addition, debtor agreed thereafter to pay PBS monthly installments of $5,000.00 until the balance was paid in full. As of May 16, 1993, debtor had paid PBS only $20,000.00 under the agreement and was $10,000.00 in arrears. No additional payments were made after that date.

On March 12, 1992, debtor and PBS entered into an agreement wherein PBS assigned to debtor all of its rights under the College lease. The assignment contained a provision identical to that found in the August 15, 1986 assignment agreement of the Ankeny lease, wherein the Ankenys agreed to perform all terms of the original lease. Further, debtor agreed to hold PBS harmless for any action arising out of debtor's possession of the lease, including reclamation and environmental requirements.

Debtor and PBS also executed on March 12, 1992 a document entitled "Coal Purchase Agreement". Debtor agreed to sell to PBS and PBS agreed to purchase from debtor at specified prices up to four (4) tons of coal mined each month from the College site. Debtor was permitted to sell tonnages in excess of four tons per month to third parties (if PBS did not purchase it), subject to a sales commission payable to PBS of the lesser of five percent (5%) or $1.00 per ton.

In spite of the aforesaid promises, debtor sold to third parties 907.16 tons of coal mined from the Ankeny site in April of 1991 without first offering it to PBS and without paying royalties to Ankeny.

Paragraph 4B of the Ankeny lease agreement provided that Ankeny was to receive a royalty of $2.50 per ton for all mined coal where Ankeny owned both the surface rights and the underlying coal. Between September of 1991 and June of 1992, debtor mined 17,305 tons of such coal from the Ankeny site for which the required royalty was not paid. The total amount of such royalties due and owing to Ankeny for this coal is $43,262.50 (17,305 × $2.50 = $43,262.50). Ankeny has brought a lawsuit in state court against PBS for payment of these royalties.

In addition, debtor did not offer to sell to PBS any of the 17,305 tons of coal it had mined but instead sold it to third parties. PBS would have purchased 13,153.27 tons of the coal, had it been given the opportunity to do so, and would have sold it to third parties at a profit of $70,766.35.

Pursuant to the coal purchase agreement, PBS purchased coal from debtor through January of 1993. It has not, however, paid debtor in full. The amount due and owing to debtor, minus a "quality adjustment" for the coal purchased, is $77,870.67.

Debtor has not paid the minimum royalty of $1,000.00 owed to the Colleges for March of 1993.

Debtor filed a voluntary chapter 11 petition on May 6, 1993.

Debtor was cited by the Pennsylvania DER in June of 1993 for failing to reclaim the Ankeny and College sites and for other violations of environmental laws and regulations. Subsequent thereto, debtor entered into a consent order with Pennsylvania DER concerning these violations. The cost of reclaiming the Ankeny site and bringing it into compliance with applicable laws and regulations is $161,673.00. The cost of doing the same for the College site is $138,743.00. On July 14, 1993, debtor brought a complaint against PBS at Adversary No. 93–2356–BM to recover the price of the coal PBS purchased from it pursuant to the coal purchase

agreement. According to debtor, the amount due and owing is $81,942.03.[1]

PBS admits that it has not paid debtor for the above coal and has counterclaimed against debtor and seeks to set off or to recoup the amount it owes to debtor against the amount it seeks to recover in its counterclaim.

On September 14, 1993, PBS submitted a proof of claim in the amount of $456,786.76. Debtor has objected to the proof of claim.

Trial on the adversary action and on PBS's proof of claim was held on July 29, 1994, at which time both parties were given an opportunity to offer evidence on the issues before the court.

## –II–

## ANALYSIS

### A. *ADVERSARY NO. 93–2356–BM*

As has been indicated, PBS does not dispute that it owes debtor the sum of $77,-870.67 pursuant to the coal purchase agreement for coal it purchased from debtor prior to the filing of the bankruptcy petition. It has, however, counterclaimed for various sums which it asserts debtor owes to it and seeks to set off or to recoup the debt it admittedly owes to debtor against these sums.

PBS seeks damages totaling $275,702.85 in Count I of its counterclaim for debtor's violations of the Ankeny lease and related documents. It asserts that debtor breached the lease agreement and assignment by failing to pay royalties to Ankeny for the period from September of 1991 through March of 1992. PBS seeks to recover the sum of $161,673.00 which will be required to restore the Ankeny site and the sum of $43,263.50 in royalties owed to Ankeny. Also, PBS asserts that debtor has breached the document entitled "First Right Of Refusal And Agency Agreement" by failing to allow PBS to purchase coal mined from the site and seeks to recover $70,766.35 in lost profits.

PBS seeks damages in the amount of $183,243.00 in Count II of its counterclaim for debtor's alleged violations of the College lease and related documents. PBS asserts that debtor breached the lease agreement and assignment by failing to pay the Colleges the required minimum royalty for March of 1992 and for failing to reclaim and restore the site. PBS seeks to recover the sum of $1,000.00 for unpaid royalties owed to the Colleges and the sum of $138,743.00 which will be required to reclaim and restore the College site. Also PBS asserts that debtor breached the agreement of March 9, 1992, wherein debtor agreed to reimburse PBS for its engineering and drilling costs and for advance royalty payments it had made to the Colleges. PBS seeks to recover the entire unpaid balance of $43,500.00 which is presently due and owing under the agreement.

As is apparent from the above recitation of the facts, PBS is entitled to recover damages on its counterclaim totaling $458,945.85 ($275,702.85 + $183,243.00 = $458,945.82). Debtor does not seriously dispute PBS's entitlement to recover these amounts on its counterclaim. It does, however, strenuously object to PBS's request that it be permitted to set off or to recoup the amount which it owes to debtor against the amount which debtor owes to it.

As far as the court can determine, debtor has objected as follows to PBS's request to set off:

(1) PBS is not entitled to set off the royalties due and owing to Ankeny and the Colleges and to set off the cost to reclaim and to restore the sites because mutuality is lacking. According to debtor, these debts are owed to Ankeny and the Colleges and not to PBS.

(2) PBS is not entitled to set off the cost to reclaim and restore the two sites and to set off the entire unpaid balance of $43,-500.00 which it owes to PBS for engineering and drilling costs and advance royalties paid to the Colleges because these debts arose post-petition rather than pre-petition. According to debtor, any debt owed to PBS for reclamation costs arose post-petition because Pennsylvania DER did not cite it until after the filing of the

---

1. Debtor has conceded in its trial brief that, after the "quality adjustment" is taken into account, the amount actually due and owing is $77,-870.67.

chapter 11 petition. Debtor further argues that PBS may set off only $10,000.00, not the entire unpaid balance of $43,500.00 owed to PBS for engineering costs and advance royalties because it had failed to pay only $10,000.00 which was due and owing as of May 6, 1993. The remaining installments totaling $33,500.00 arose post-petition because they were not due until after the petition had been filed.

(3) PBS is not entitled to exercise setoff with respect to any of the above sums because it voluntarily "contracted away" its right to do so in paragraph 11 of the document entitled "First Right Of Refusal And Agency Agreement".

As far as the court can determine, debtor also has objected as follows to PBS's request to recoup:

(1) PBS is not entitled to recoup because the debt PBS owes to debtor did not arise out of the same transaction as do the debts which it owes to PBS; and

(2) PBS is not entitled to recoup because it voluntarily "contracted away" its right to do so in the same provision in which it "contracted away" its right to set off.

Debtor's specific objections shall be addressed *ad seriatim.*

### i) *Requirements For Setoff.*

11 U.S.C. § 553 provides in relevant part as follows:

(a) ... [T]his title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case....

■ Section 553 incorporates and preserves in bankruptcy the right to setoff which is available under the common law. *U.S. on Behalf of IRS v. Norton,* 717 F.2d 767, 772 (3d Cir.1983). Parties owing mutual debts are permitted to state the accounts between them, to subtract the one from the other, and to pay only the balance. This practice is grounded in avoiding the absurdity of "making A pay B when B owes A". *Matter of Bevill, Bresler & Schulman Asset*

*Management,* 896 F.2d 54, 57 (3d Cir.1990) (*quoting Studley v. Boylston National Bank,* 229 U.S. 523, 528, 33 S.Ct. 806, 808, 57 L.Ed. 1313 (1912)).

■ The following requirements all must be met in order for setoff pursuant to § 553 to be permitted:

(1) a creditor owes a pre-petition debt to the debtor;

(2) the debtor owes a pre-petition debt to that creditor; and

(3) the debts in question are mutual.

*See In re Sherry & O'Leary, Inc.,* 148 B.R. 248, 252 (Bankr.W.D.Pa.1992).

■ As is readily apparent, all of the debts for which set off is sought pursuant to § 553 must have arisen *prior* to the filing of the bankruptcy petition. A creditor may not set off a pre-petition claim it has against a post-petition debt it owes to the debtor. *Cooper–Jarrett, Inc. v. Central Transport, Inc.,* 726 F.2d 93–96 (3d Cir.1984). Also, a creditor may not set off a post-petition claim it has against a pre-petition debt it owes to a debtor. *In re Sherry & O'Leary,* 148 B.R. at 253.

■ A creditor asserting setoff has the burden of establishing that all of the above requirements have been met. *In re Stall,* 125 B.R. 754, 757 (Bankr.S.D.Ohio 1991).

■ A determination that the above requirements have been met is not the end of the matter. Setoff in a chapter 11 case is permissive, not mandatory. *Matter of Bevill, Bresler & Schulman Asset Management,* 896 F.2d at 57. The exercise of setoff in bankruptcy lies within the sound discretion of the court and depends on equitable considerations. *U.S. on Behalf of IRS,* 717 F.2d at 772.

### ii) *Lack Of Mutuality.*

■ Debtor's assertion that PBS may not set off the debt it owes to debtor against the sums due and owing for royalty payments to Ankeny and the Colleges and for reclamation and restoration of the two sites because of lack of mutuality is without merit. The debts in question are owed to PBS.

In order for there to be mutuality, "each party must own his claim in his own right severally, with the right to collect in his own name against the debtor in his own right and severally". *Braniff Airways, Inc. v. Exxon Co., U.S.A.,* 814 F.2d 1030, 1036 (5th Cir. 1987) (*quoting In re DePrizio Construction Co.,* 52 B.R. 283, 287 (Bankr.N.D.Ill.1985)).

This requirement has been met in this instance with respect to the royalties owed to Ankeny and the Colleges and the cost of reclaiming and restoring the two sites. The leases between PBS and Ankeny and the Colleges, respectively, and the assignments of those lease from PBS to debtor give PBS the right to collect those obligations from debtor in its own name and in its own right.

PBS remains liable for these items. The assignments to debtor did not relieve PBS of its liability under the original lease agreements for royalties and reclamation costs. Paragraph 17 of the lease agreement between PBS and Ankeny and paragraph 16 of the lease agreement between PBS and the Colleges provided that, in the event PBS assigned the leases to a third party, PBS remained liable for payment of the royalties and for compliance with all other provisions binding upon it.

Debtor in turn is liable to PBS for these items. The assignments to debtor gave PBS the right to recover from debtor for any liability PBS might incur as a consequence of debtor's tenure under the lease. Both assignments contained a provision wherein debtor specifically promised and agreed to keep and perform all the conditions, etc., of the leases and agreed to "indemnity and save [PBS] harmless" from any and all liabilities arising out of debtor's possession of the leasehold premises, including reclamation and environmental requirements. Debtor, in short, agreed to indemnity PBS for any liability incurred by it as a result of debtor's failure to perform its obligations as sublessee-assignee.

### iii) *Pre–Petition Debt.*

■ Debtor's assertion that PBS may not set off the debt it owes to debtor against the sums debtor owes to it for reclamation and restoration of the two sites because the latter debts arose post-petition rather than pre-petition also is without merit. The fact that debtor was not cited by Pennsylvania DER until after the bankruptcy petition was filed is of no consequence.

■ "Debt" is defined in the Bankruptcy Code as "liability on a claim". 11 U.S.C. § 101(12). "Claim" is defined as:

a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.

11 U.S.C. § 101(5)(A). The term "debt" should be read as being coextensive with the term "claim". *Pennsylvania Department Of Public Welfare v. Davenport,* 495 U.S. 552, 558, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990).

Although the Code does not define *when* a "right to payment" arises, the case law in this circuit is clear as to when PBS's "right to payment" from debtor for reclaiming and restoring the Ankeny and College sites arose.

■ As has been indicated, PBS's claims against debtor for reclamation costs arose from assignments executed on August 15, 1986 and on March 12, 1992. When parties agree in advance that one party will indemnify the other in the event of a certain occurrence, there exists a "right to payment", albeit contingent, *upon the signing of the agreement. Matter of M. Frenville Co., Inc.,* 744 F.2d 332, 336 (3d Cir.1984) (*citing In re THC Financial Corp.,* 686 F.2d 799, 802–04 (9th Cir.1982); *also In re All Media Properties, Inc.,* 5 B.R. 126, 133 (Bankr.S.D.Tex. 1980)).

The agreements containing the above indemnification provisions were executed well before the filing of the chapter 11 petition. Accordingly, PBS's "right to payment" for reclamation and restoration of the two sites arose pre-petition.

■ Debtor's insistence that PBS may set off only the $10,000.00 in unpaid installments due as of the filing of the bankruptcy petition for engineering and drilling costs and advance royalty payments to the Col-

leges and that it may not set off the remaining $33,500.00 in installments that became due post-petition also is without merit.

■ As has been indicated, a debt in the amount of $63,500.00 existed as of March 9, 1992, some nine (9) months prior to the filing of the chapter 11 petition, when debtor agreed to reimburse PBS that amount for these costs. PBS's "right to payment" arose at that time. The fact that installments totaling $33,500.00 did not become due until after May 6, 1993 does not transform this amount into a post-petition obligation. Set-off may be asserted pursuant to § 553 where one of the debts subject to setoff is absolutely owed but is not presently due when the petition is filed. *Matter of Nickerson & Nickerson*, 62 B.R. 83, 85 (Bankr.D.Neb. 1986). It is not necessary for setoff purposes that the debt be presently due when the case is commenced. *In re Elsinore Shore Associates*, 67 B.R. 926, 946 (Bankr.D.N.J.1986).

### iv) *Did PBS "Contract Away" Its Setoff Rights?*

■ Debtor's contention that PBS voluntarily "contracted away" its right to assert setoff as a result of paragraph 11 of the document entitled "First Right Of Refusal And Agency Agreement" is groundless and deserving of only a few cursory remarks.

The provision merely provided that debtor agreed to indemnify PBS for any liability arising under that particular agreement, provided that PBS was not released from paying debtor under the terms of the agreement. It says nothing at all about setoff or recoupment. Debtor brought the above adversary action when PBS refused to pay it for coal it had purchased.

PBS will be permitted to set off the pre-petition debt of $77,870.67 which it owes to debtor against the pre-petition debt totaling $458,945.85 which debtor owes to it.[2] Accordingly, PBS's proof of claim in the amount of $381,075.18 shall allowed ($458,945.85 − $77,870.67 = $381,075.18).

An appropriate order shall be issued.

---

2. It is unnecessary to address debtor's objections to PBS's request to recoup in light of the determination that debtor's objections to PBS's intention to exercise setoff are unfounded. PBS's request to recoup was asserted as an alternative to its request to setoff.

### ORDER OF COURT

AND NOW at Pittsburgh this 31st day of August, 1994, in accordance with the accompanying Memorandum Opinion, it hereby is **ORDERED, ADJUDGED** and **DECREED** that

(1) defendant PBS Coals, Inc. owes debtor MetCo Mining and Minerals, Inc. a pre-petition debt in the amount of $77,870.67;

(2) debtor owes defendant a pre-petition debt in the amount of $458,945.85;

(3) defendant be and hereby is authorized to set off the above-referenced pre-petition, mutual debts; and

(4) defendant's proof of claim be and hereby is allowed in the amount of $381,675.18.

IT IS SO **ORDERED.**