George E. KUCIN, et al.,

v.

Deborah H. DEVAN, et al.

No. JFM–99–3584.

United States District Court,
D. Maryland.

July 26, 2000.

Lawrence D. Coppel, Gordon, Feinblatt, Rothman, Hoffberger & Hollander, Baltimore, MD, for Plaintiff.

Deborah H. Devan, Alan P. Hillman, Neubergr, Quinn Gielen, Rubin & Gibber, Baltimore, MD, for Defendant.

## MEMORANDUM

MOTZ, District Judge.

This is an appeal from the Bankruptcy Court's memorandum and order denying George E. Kucin, Paul D. Levine, Marvin S. Rice, and Kenneth Rodriguez (collectively, the "Executives") motions for allowance of administrative expense claims.[1] Deborah H. Devan, the Chapter 7 Trustee for the bankrupt estate of Merry–Go–Round Enterprises, Inc. ("MGRE"), filed a cross-appeal arguing that the Bankruptcy Court incorrectly declined to account for the risk of nonpayment in determining the values of the Executives' claims. I find that the Bankruptcy Court did not err in calculating the amounts of the Executives' claims or denying them administrative priority. Therefore, I affirm the judgment of the Bankruptcy Court.

### I.

Each of the Executives was a long-time senior executive at MGRE. In either 1984 or early 1985, the Executives individually entered into Deferred Compensation Agreements with MGRE. Each Deferred Compensation Agreement provided that the Executive would receive $100,000 per year for life commencing at age sixty-five, adjusted annually for increases in the cost-of-living. Furthermore, the Executive's

---

1. By my March 24, 2000 order, this case has been consolidated with *Robert Heyman v. Deborah H. Devan,* No. 00–707 (D. Md. filed Mar. 10, 2000). The same reasoning outlined in this memorandum opinion applies equally to both cases.

interest would vest fully if he worked at MGRE for seven years after entering the agreement.

On January 11, 1994, MGRE, which operated over 1,200 retail clothing stores nationwide, voluntarily filed for bankruptcy under Chapter 11. In an effort to reorganize, MGRE sought to retain key executives and employees including the Executives. Early on in its attempt to reorganize MGRE sought and obtained approval from the Bankruptcy Court to make payments for certain prepetition payroll and employee benefits expenses. Among other rulings made on April 11, 1994, the Bankruptcy Court ordered that "the Debtor shall be permitted to make any unpaid pre-petition contributions to its Executive Deferred Compensation plan" and "that the Debtors shall be permitted to honor and maintain the supplemental retirement agreements described in the Motion." Appellants' Br.App. 1 at 2. MGRE continued operating its business as a debtor-in-possession for more than two years while it attempted to reorganize. Ultimately, MGRE was unable to salvage its failing business, and in 1996 the Bankruptcy Court converted it to Chapter 7 and appointed Deborah H. Devan as Trustee.

In January 1998, each of the Executives filed a motion, which relied on the language in the Bankruptcy Court's April 11, 1994 preconversion order, seeking to establish Chapter 11 administrative status for their claims under the Deferred Compensation Agreements.[2]

## II.

■ Chapter 11 administrative expenses have priority over most other unsecured claims. *See* 11 U.S.C. § 507(a)(1). Generally, in order to qualify as a § 503 administrative expense, "(1) the claim must arise out of a post-petition transaction between the creditor and the debtor-in-possession (or trustee) and (2) the consideration supporting the claimant's right to payment must be supplied to and beneficial to the debtor-in-possession in the operation of the business." *In re Merry–Go–Round Enters., Inc.*, 180 F.3d 149, 157 (4th Cir.1999) (quoting *In re Stewart Foods, Inc.*, 64 F.3d 141, 145 n. 2 (4th Cir.1995)). Nevertheless, prepetition claims may also qualify for administrative expense status if they were executory contracts that were assumed under 11 U.S.C. § 365 by the debtor-in-possession. *See Merry–Go–Round*, 180 F.3d at 155–56 (finding that assumed prepetition and new postpetition contracts are functionally analogous).

■ Here, the Executives' claims are clearly based on prepetition agreements. The Deferred Compensation Agreements were executed in either 1984 or 1985, approximately a decade before MGRE filed for bankruptcy.[3] Furthermore, the

---

2. In addition to the April 11, 1994 order, Rodriguez points to the Bankruptcy Court's order entered August 31, 1995, which stated:

   [5]c. During the severance period, Mr. Rodriguez shall be entitled to continue to receive all existing employee benefits. Mr. Rodriguez shall also be entitled to receive his supplemental retirement benefits in which he is fully vested.
   * * *
   6. All obligations of MGRE to Mr. Sullivan and Mr. Rodriguez described in paragraphs 4 and 5 above shall be binding upon MGRE and its estate, and all successors in interest thereto. Except as set forth in paragraph 4.d with respect to Mr. Sullivan and in paragraphs 5.b and 5.e with respect to Mr. Rodriguez, payments due to either Mr. Sullivan or Mr. Rodriguez under this Order shall be treated as administrative expenses under 11 U.S.C. § 503(b) and shall be entitled to the priority granted by 11 U.S.C. § 507(a)(1).
   Appellee's Br. at 18.

3. Rice's situation is no different. He left MGRE in 1993 prior to its petition for Chapter 11 bankruptcy. In January 1996, after MGRE's petition but before its Chapter 7 conversion, Rice executed an Age 60 Election, which allowed him to begin receiving his annual benefit at sixty by waiving the subsequent cost-of-living increase. By this time, however, Rice was already fully vested in the prepetition Deferred Compensation Agreement and his subsequent voluntary amend-

Fourth Circuit's holding in *Stewart Foods* precludes any argument that the agreements were executory contracts, which could have been assumed postpetition. In *Stewart Foods* the former president of the debtor argued that his prepetition deferred compensation agreement with the debtor constituted an administrative expense of the bankruptcy estate. The court found that the agreement was properly characterized as a nonexecutory contract since the retirement agreement had already vested and the president owed no further employment responsibilities to the debtor. *See id.* at 146. Likewise, in the present case, all of the Executives are vested fully, and they have no further obligations to perform in order to receive their deferred compensation. Thus, the Deferred Compensation Agreements are nonexecutory and cannot be assumed postpetition by the debtor-in-possession. The Executives' claims under the agreements are, therefore, only general unsecured claims, not administrative expenses.

■ Regardless of whether the Deferred Compensation Agreements were prepetition or executory contracts, the Executives maintain that the Bankruptcy Court's postpetition orders elevated their retirement agreements to postpetition administrative priority as a matter of necessity. I disagree. The language of the orders does not support the Executives' position. The Executives rely heavily on

the April 1994 order that stated "the Debtors shall be permitted to honor and maintain the supplemental retirement agreements described in the Motion." Appellants' Br.App. 1 at 2. This order was only a routine "first day order" designed to allow MGRE to maintain the status quo with its employees while it attempted to reorganize. Nothing in the order suggests that the Bankruptcy Court intended to convert the Executives' general unsecured claims into administrative expenses. After thoroughly reviewing his own language, the same bankruptcy judge who issued the order determined "that the claims are not administrative expenses, but rather prepetition claims." *Id.* at 1. Therefore, given the presumption in bankruptcy cases that all of a debtor's limited resources will be equally distributed among creditors, *see Merry–Go–Round,* 180 F.3d at 157, the order's lack of explicit language regarding administrative priority belies the Executives' contention.[4]

Furthermore, the Executives' view that the Bankruptcy Court's order implicitly elevated the Deferred Compensation Agreements to administrative status under the necessity doctrine is misguided. While there are cases that support the notion that bankruptcy courts may authorize postpetition payment of prepetition claims when necessary in certain situations,[5] there is nothing in those cases to suggest that such authorization either constitutes a

ment did not constitute a new agreement or postpetition transaction.

4. Rodriguez's additional support is similarly unavailing. Although the language of the August 31, 1995 order is somewhat ambiguous about whether Rodriguez's retirement benefits were recategorized as administrative expenses, the context of the order and the Bankruptcy Court's other rulings foreclose that possibility. First, the August order was given in response to MGRE's motion regarding a severance package for Rodriguez, not his retirement benefits. In addition, the Executives' reading of the order would conflict with an earlier January 17, 1995 oral ruling in which the Bankruptcy Court precisely distinguished between Rodriguez's prepetition and

postpetition claims. In that oral ruling, the Bankruptcy Court, in clear and unambiguous terms, only granted administrative priority to Rodriguez's benefit claims that accrued postpetition. Moreover, the Bankruptcy Court's subsequent holding in its October 1999 memorandum and order reiterates and confirms the view that the August 1995 order did not grant administrative priority to Rodriguez's Deferred Compensation Agreement.

5. *See In re Ionosphere Clubs, Inc.,* 98 B.R. 174 (Bankr.S.D.N.Y.1989); *In re . Gulf Air, Inc.,* 112 B.R. 152 (Bankr.W.D.La.1989). *But see Official Comm. of Equity Sec. Holders v. Mabey,* 832 F.2d 299 (4 th Cir.1987); *In re Saybrook Mfg. Co.,* 963 F.2d 1490 (11 th Cir. 1992).

postpetition transaction or converts prepetition claims into administrative expenses. Indeed, there is no reason whatsoever to suppose that a bankruptcy court's Chapter 11 postpetition permission to satisfy some critical prepetition claims also recategorizes those claims as administrative expenses in a subsequent Chapter 7 liquidation. Therefore, the Bankruptcy Court's entry of the amended first day motion in April 1994 did not implicitly require converting unsecured claims into administrative expenses.

### III.

Both parties challenge the Bankruptcy Court's determination of the discounted present value of the Deferred Compensation Agreements. The Executives assert that the present value of their claims should be calculated as of the date that the claims are actually paid. The Trustee disputes the Bankruptcy Court's decision not to consider the risk of nonpayment in determining the present value of the claims. I find that neither argument has merit.

■■ The Bankruptcy Court calculated the present value of the Executives' claims by utilizing the date when MGRE filed for bankruptcy under Chapter 11. Bankruptcy law prohibits payment of interest accruing postpetition upon unsecured prepetition indebtedness. *See* 11 U.S.C. § 502(b)(2); *see also Nicholas v. United States,* 384 U.S. 678, 682, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966) ("It is a well-settled principle of American bankruptcy law that in cases of ordinary bankruptcy, the accumulation of interest on claims against a bankrupt estate is suspended as of the date the petition in bankruptcy is filed."). Calculating the present value of the Executives' claims with a later date would have the impermissible effect of paying interest on an unsecured claim. Therefore, the Bankruptcy Court correctly used the date closest to the date of petition.

■ In her cross-appeal, the Trustee faults the Bankruptcy Court for failing to take into consideration the risk of nonpayment in determining the present value of the Executives' claims. According to William Kerr, the Trustee's expert economist, the value of the unfunded promise to make future retirement payments should have been discounted based on MGRE's creditworthiness. He argued that the Bankruptcy Court by discounting the agreements as though they were like government bonds was "essentially saying we're going to make what's a very risky, a promise that has some degree of risk to it, we're going to turn it into 100 percent certainty." Appellee Br. at 25–26. Even though Kerr's analysis is unsupported by case law, it has a certain intuitive appeal. Obviously, MGRE's promise to make payments in the future is worth less than the same promise from the United States government. However, Kerr's methodology completely ignores fundamental principles of contract law. *Cf. In re Highland Superstores, Inc.,* 154 F.3d 573, 579–80 (6th Cir.1998) (declining to apply two different discount rates accounting for relative creditworthiness of debtor-tenant, who rejected the lease, and the replacement tenant). In contract law, the nonbreaching party is entitled to damages for its "expectation interest," which are damages sufficient to place the nonbreaching party in as good a position as the party would have been had the contract been performed. *See* Restatement (Second) of Contracts §§ 344, 347 (1981). Here, the Executives expected to receive from MGRE their retirement benefits upon reaching the age of sixty-five (age sixty for Rice). Therefore, their claims for retirement benefits, discounted to present value, are a legal certainty and need not be further discounted for the risk of nonpayment. Otherwise, the risk of nonpayment would be accounted for twice since the Executives already stand to receive only a fraction of their claims.

For these reasons, the judgement of the Bankruptcy Court is affirmed. A separate

**274**

order to that effect is being entered herewith.