## In re TRACE INTERNATIONAL HOLDINGS, INC. et al., Debtors.

### John S. Pereira, as Chapter 7 Trustee of Trace International Holdings, Inc., et al., Plaintiffs,

v.

### Robert H. Nelson, et al., Defendants.

Bankruptcy Nos. 99–B–10425 (SMB), 99–B–10426 (SMB).

Adversary No. 00–2040.

United States Bankruptcy Court, S.D. New York.

Oct. 11, 2002.

Jaspan, Schlesinger, Hoffman, LLP (Linda S. Agnew, Of Counsel), Garden City, NY, for Plaintiff.

Feder, Kaszovitz, Isaacson, Weber, Skala, Bass & Rhine, LLP (Howard Rhine, Barbara A. Aurecchione, Of Counsel), New York City, for Robert H. Nelson.

**MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART ROBERT NELSON'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

STUART M. BERNSTEIN, Chief Judge.

John Pereira, Esq., the chapter 7 trustee of Trace International Holding, Inc., filed this adversary proceeding, *inter alia*, to recover $600,000.00 owed by the defendant Robert H. Nelson. Nelson does not contest his liability, but seeks to setoff certain obligations he says the debtor owed him. He moved for partial summary judgment, and the trustee cross-moved for summary judgment on his eighth claim—his sole remaining claim—to foreclose a mortgage securing Nelson's debt.

Nelson's motion raised only two issues that remain undecided. The first concerned his right to setoff his stock claim which is described below. The second involved the legal issue of whether the allowed amount of his deferred compensation claim, also described below, was the aggregate amount of the claim or its discounted value on the petition date.

For the reasons that follow, I conclude that Nelson is entitled to partial summary judgment on his stock claim, although the amount of that setoff must still be resolved. In addition, while his contractual right to setoff his deferred compensation claim is still disputed, the amount of that claim is limited to the discounted value as of the chapter 11 petition date. Finally, the trustee is entitled to summary judgment on his foreclosure claim, but cannot enforce it until Nelson's setoff claims have been resolved.

## BACKGROUND

### A. Facts

The material facts are not in dispute. Nelson served as the chief financial officer of the debtor and its predecessor companies (collectively "Trace") from February 1987 until January 2000, when the debtor's chapter 11 case, filed six months earlier, was converted to chapter 7. During his tenure, he incurred a $600,000.00 obli-

gation to Trace. His debt was secured by a mortgage executed by Nelson and his spouse. He did not repay this obligation, does not dispute that he owes it, and does not challenge the validity of the mortgage.

Nelson, however, also acquired claims against Trace. In 1989, he entered into a Deferred Compensation Agreement. It provided that "[u]pon the Employee's retirement at age sixty-five (65), the Corporation shall pay the Employee $4,166.67 monthly for a period of one hundred twenty (120) months for a total retirement benefit of $500,000." If Nelson were to die before the payout was completed, his beneficiary would be entitled to receive the remaining payments. Nelson was born in 1945, and will not reach his sixty-fifth birthday until 2010.

In addition, Nelson obtained certain rights to the stock of Foamex International, Inc. ("Foamex"). Foamex was a wholly-owned subsidiary of Trace. In 1993, Trace made a public offering of Foamex shares. In connection with that offering, Trace granted Nelson the right to receive 18,336 shares of Foamex which Trace held in recognition of his services. One half of the shares were to vest on December 15, 1995, and the other half on December 15, 1998.

Prior to any vesting, Trace pledged the Foamex shares to Donaldson Lufkin & Jenrette Securities Corp. ("DLJ") as security for a $25 million margin loan. In addition, Trace granted a second lien on the Foamex shares to the Bank of Nova Scotia. The Trace board of directors unanimously approved the transactions involving the pledge of the Foamex stock. Nelson was a member of the board, and joined in the vote. The record does not indicate the total number of directors that participated, except that at least two other directors voted with Nelson in favor of the transaction.

Trace eventually defaulted on both loans. As a consequence, DLJ foreclosed on the shares, and the shares were no longer available to satisfy the employee awards.[1]

## B. Procedural History

While the case was in chapter 11, the Creditors' Committee file a complaint against Nelson in an effort to recover the $600,000.00 debt. After the case converted, the trustee filed an amended complaint. Nelson, joined by several other defendants, answered the amended complaint on July 19, 2000. The answer asserted a setoff on Nelson's behalf for sums due on account of vested deferred compensation, stock options and other compensation.

The trustee and several of the defendants, including Nelson, subsequently entered into a stipulation, "so ordered" on March 22, 2001, that resolved the trustee's monetary claims. Nelson agreed that "[u]pon the trial of this adversary proceeding," the trustee could enter judgment against him in the principal amount of $600,000.00 plus prejudgment interest, "less the total amount of any setoffs awarded by the Court." The stipulation and order disposed of all of the trustee's claims except for the eighth claim.

According to the stipulation and order, the sole remaining issue to be tried was the validity and amount of Nelson's setoff claims. Nelson moved for summary judg-

---

1. A proxy statement filed in 1998 indicated that Trace intended to "cash out" the stock grant, and valued Nelson's rights in the amount of $343,744.00. (*Affidavit of Marshall S. Cogan In Support of Motion for Summary Judgment,* sworn to May 14, 2002, Ex. D.) No proof has been submitted that Trace undertook any contractual or other legal obligation to follow through with its plan to make the cash payment in lieu of stock.

ment in February 2002, asserting a right to setoff his claims based on the Deferred Compensation Agreement, vacation pay and the stock grant. The trustee cross-moved for summary judgment to dismiss Nelson's bonus claim.

In a February 28, 2002 bench ruling, I denied the motions except to the extent that Nelson sought to setoff his vacation pay claim in the sum of $44,807.69. The Deferred Compensation Agreement contained ambiguous language regarding Nelson's right to setoff. In addition, Nelson's participation in the vote to pledge the Foamex shares raised the possibility that he had prevented the performance of the obligation he was now seeking to enforce. *See Grad v. Roberts*, 14 N.Y.2d 70, 248 N.Y.S.2d 633, 198 N.E.2d 26, 28 (1964).

## C. The Present Motion

On March 20, 2002, Nelson made this second summary judgment motion. Once again, he sought to setoff the entire $500,000.00 payout due under the Deferred Compensation Agreement. With one exception, the motion rehashed the arguments that I had already rejected. I declined to reconsider those arguments, viewing the second motion as a belated and untimely attempt to reargue the first motion. The one unresolved issue related to the amount of the deferred compensation claim.

Nelson also renewed his motion for summary judgment on the stock claim. This aspect of the motion, however, was proper because he provided additional facts relating to his participation in the decision to pledge the Foamex shares. *See Lindsey v. Dayton–Hudson Corp.*, 592 F.2d 1118, 1121 (10th Cir.)("A second motion for summary judgment is proper after a prior motion is dismissed, if supported by new material."), *cert. denied*, 444 U.S. 856, 100 S.Ct. 116, 62 L.Ed.2d 75 (1979);

*Twin Lab., Inc. v. Weider Health & Fitness*, 720 F.Supp. 31, 34 (S.D.N.Y. 1989)(same), *aff'd*, 900 F.2d 566 (2d Cir. 1990). He argued that his participation did not constitute a waiver, and was necessary to fulfill his fiduciary obligations. In addition, he insisted that his decision was protected by the business judgment rule. In reply, the trustee maintained that Nelson's participation in the decision to pledge the Foamex shares rendered it impossible to perform the stock grant, and should bar Nelson from asserting the claim.

I heard the motions on June 20, 2002. As noted, I declined to consider the deferred compensation claim, except I reserved decision on the value of the claim. I also reserved decision on Nelson's motion for partial summary judgment on the stock claim. Finally, I granted summary judgment to the trustee on the eighth, foreclosure claim, on the condition that the trustee would not take any action to foreclose the estate's mortgage until the setoff issue was resolved.

## DISCUSSION

## A. The Standard Governing Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Fed. R. Bankr.P. 7056, governs summary judgment motions. A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The moving party bears the initial burden of showing that the undisputed facts entitle him to judgment as a matter of law. *Rodriguez v. City of New*

*York*, 72 F.3d 1051, 1060–61 (2d Cir.1995). If the movant carries this initial burden, the nonmoving party must set forth specific facts that show triable issues, and cannot rely on pleadings containing mere allegations or denials. Fed.R.Civ.P. 56(e). *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In deciding whether material factual issues exist, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587, 106 S.Ct. 1348.

## B. The Stock Agreement

■ As noted above, Nelson voted along with at least two other Trace directors to authorize the transaction that resulted in the pledge of the Foamex shares. The pledge followed by the foreclosure of the pledge prevented the grantees from acquiring their vested interests. The primary question is whether Nelson's participation in this act prohibits him from enforcing his rights under the stock grant.[2] I conclude that Nelson's participation does not prevent the relief he seeks.

■ Under the doctrine of prevention, a party that hinders or prevents the fulfillment of a condition to his performance cannot insist that the condition must occur before he becomes obligated to perform. *Moore Bros. Co. v. Brown & Root Inc.*, 207 F.3d 717, 725 (4th Cir.2000); *Cauff, Lippman & Co. v. Apogee Fin. Group, Inc.*, 807 F.Supp. 1007, 1022 (S.D.N.Y.1992); RE-STATEMENT (SECOND) OF CONTRACTS § 245 (1981). The rationale is obvious; a party should not be able to take advantage of his own wrong. *A.I.C. Ltd. v. Mapco Petroleum, Inc.*, 711 F.Supp. 1230, 1238 (D.Del. 1989).

■ Under a corollary principle, in "every contract there is an implied undertaking on the part of each party that he will not intentionally and purposely do anything to prevent the other party from carrying out the agreement on his part." *Wieder v. Skala*, 80 N.Y.2d 628, 593 N.Y.S.2d 752, 609 N.E.2d 105, 109 (1992)(quoting *Patterson v. Meyerhofer*, 204 N.Y. 96, 97 N.E. 472, 473 (1912)); *Grad v. Roberts*, 248 N.Y.S.2d 633, 198 N.E.2d at 28. A party who causes a breach is precluded from recovering damages based on the breach or using it as a defense in an action based on his own nonperformance. *Patterson v. Meyerhofer*, 97 N.E. at 473 (defendant-contract vendee who prevented plaintiff-contract vendor from acquiring title to real estate that was the subject of the parties' contract was liable to plaintiff for breach of the sale contract despite the plaintiff's inability to deliver title).

■ The doctrine of prevention is based on the implied duty of the contracting parties to cooperate. As a result, it does not apply in the absence of a breach of the duty, such as where the other party assumed the risk of lack or cooperation, or the lack of cooperation was justifiable. RE-STATEMENT (SECOND) OF CONTRACTS § 245, cmt. a. In addition, the lack of cooperation must contribute materially to the other party's inability to perform. *Id.*, cmt. b.

---

2. Nelson's other arguments deserve only brief mention. He was not compelled to vote as a director. He had an interest in the transaction, and could have abstained. In addition, even if his vote was justifiable under the business judgment rule, it does not necessarily follow that it relieved him of the effect of the "prevention doctrine," discussed in the succeeding text. In light of the disposition of the claim, it is not necessary to decide that issue.

Here, Nelson's participation in the board vote was immaterial. It is undisputed that all of the directors who did vote supported the transaction, and that the transaction was validly authorized. Nelson's vote did not make any difference. Even if he had abstained or actually voted against the transaction, it would still have been authorized by the board. Nelson is, therefore, entitled to partial summary judgment setting off the amount of his stock claim. However, the parties did not present evidence regarding the amount of the claim, and its liquidation must await further proceedings.

## C. The Amount of the Deferred Compensation Claim

The deferred compensation claim was not due as of the chapter 11 petition date, and will not become due until 2010 when Nelson reaches 65 years of age. In addition, when it becomes due, it will be payable in monthly installments over ten years. The trustee argues that the amount of the deferred compensation claim, whether for setoff or distribution purposes, is limited to its present value on the petition date, or approximately $58,000.00.[3] Nelson contends that the allowed amount should be the aggregate amount of the claim—$500,000.00. The trustee's argument is the better one, supported by the unambiguous language of the Bankruptcy Code.

■ Where a party objects to a claim, § 502(b) of the Bankruptcy Code directs the Court to determine the amount of the claim *as of the petition date,* and allow it in that amount. Any portion of the claim that is unmatured as of the petition date must, therefore, be discounted to its value as of the petition date. *In re CSC Indus.,*

*Inc.,* 232 F.3d 505, 507 (6th Cir.2000), *cert. denied,* —— U.S. ——, 122 S.Ct. 50, 151 L.Ed.2d 20 (2001); *Kucin v. Devan,* 251 B.R. 269, 273 (D.Md.2000); *In re Loewen Group Int'l, Inc.,* 274 B.R. 427, 434 (Bankr. D.Del.2002); *In re Thomson McKinnon Securities, Inc.,* 149 B.R. 61, 75 (Bankr. S.D.N.Y.1992). Discounting is consistent with the fundamental goal of treating similar claims in the same manner, *In re CSC Indus., Inc.,* 232 F.3d 505, 508; *In re O.P.M. Leasing Servs., Inc.,* 79 B.R. 161, 167 (S.D.N.Y.1987); *In re CF & I Fabricators of Utah, Inc.,* 150 F.3d 1293, 1300 (10th Cir.1998), *cert. denied,* 526 U.S. 1145, 119 S.Ct. 2020, 143 L.Ed.2d 1032 (1999); *In re Loewen Group Int'l, Inc.,* 274 B.R. at 434–35, and reflects the economic reality that a sum of money received today is worth more than the same amount received tomorrow. *In re Loewen Group Int'l, Inc.,* 274 B.R. at 434. Absent bankruptcy, a creditor like Nelson would have to wait many years before receiving and using the entire payout. Paying the face amount on an accelerated basis would overcompensate the creditor by enabling him to receive and use the money sooner. *LTV Steel Co. v. Aetna Cas. & Sur. Co. (In re Chateaugay Corp.),* No. 94 Civ. 1257(LMM), 1996 WL 346010, at * 1 (S.D.N.Y. June 24, 1996); *In re Winston Mills, Inc.,* 6 B.R. 587, 599–600 (Bankr. S.D.N.Y.1980); *see In re Kucin,* 251 B.R. at 273 (discounting is necessary to prevent the payment of post-petition interest that is disallowed under § 502(b)(2)).

This conclusion does not contradict the principle that bankruptcy accelerates all unmatured claims. *See In re Texaco Inc.,* 73 B.R. 960, 965–66, (Bankr.S.D.N.Y.1987); S. REP. NO. 95–989, at 63 (1978), U.S.CODE CONG. & ADMIN.NEWS 1978, 5787, 5849; H.R.

---

**3.** Nelson did not supply evidence of the present value. It was agreed that I would decide that issue in a separate proceeding if I concluded that the claim was limited to its present value.

REP. NO. 95–595 (1977), U.S.CODE CONG. & ADMIN.NEWS 1978, 5963. The Bankruptcy Code defines "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured ...." 11 U.S.C. § 101(5)(A). The broad definition was intended to reach all legal obligations, no matter how remote, and deal with them in the bankruptcy case. H.R. REP. NO. 95–595, at 309 (1977), U.S.CODE CONG. & ADMIN.NEWS 1978, at 5963, 6266; S. REP. NO. 95–989, at 21 (1978), U.S.CODE CONG. & ADMIN.NEWS 1978, at 5787, 5807. The aggregate amount of Nelson's unmatured claim for deferred compensation is unquestionably a "claim" under this definition.

▮ Nevertheless, the amount of the claim may and often does vary from the *allowed* amount of the claim, the portion eligible for distribution. For example, a disputed claim is still a "claim" under § 101(5)(A) even though the allowed amount may be zero. Accordingly, although Nelson had an unmatured right to the payment in the sum of $500,000.00 as of the petition date, the allowed amount of his claim must be discounted to its value as of the petition date.

▮ This same principle limits the Nelson's right to setoff. Section 553 preserves the creditor's right to setoff, except to the extent that the creditor's claim is disallowed. 11 U.S.C. § 553(a)(1).[4] Similarly, § 506(a) gives a secured claim to the extent that "[a]n allowed claim of a creditor ... is subject to setoff under section 553."[5] Thus, the allowed amount of the claim—rather than the amount of the claim—defines the extent of the creditor's right to both distribution and setoff. Accordingly, a creditor like Nelson holding an unmatured right to payment may set off no more than the discounted value of that claim as of the petition date.

It is true that several authorities, including some that Nelson cited, permitted the creditor to setoff the entire amount of his unmatured claim. *See, e.g., MetCo Mining & Minerals, Inc. v. PBS Coals, Inc. (In re MetCo Mining & Minerals, Inc.)*, 171 B.R. 210, 217–18 (Bankr.W.D.Pa.1994); *Express Freight Lines, Inc. v. Kelly (In re Express Freight Lines, Inc.)*, 130 B.R. 288, 293 (Bankr.E.D.Wis.1991); *In re Lund,* 136 B.R. 237, 239 (Bankr.D.N.D.1990); *Kroh Operating Ltd. P'ship v. Barnett Bank of Southwest Florida (In re Kroh Bros. Dev. Co.)*, 101 B.R. 114, 118 (Bankr.W.D.Mo. 1989); *In re Nickerson & Nickerson, Inc.*, 62 B.R. 83, 86 (Bankr.D.Neb.1986); *see generally* 5 ALAN N. RESNICK & HENRY J. SOM

**4.** Section 553(a)(1) states:

Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that—

(1) the claim of such creditor against the debtor is disallowed....

**5.** Section 506(a) states:

An allowed claim of a creditor secured by a lien on property in which the estate has an

interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

MER, COLLIER ON BANKRUPTCY ¶ 553.03[1][d], at 553–17 (15th rev. ed.2002). These authorities are distinguishable, and in the end, unpersuasive.

Each case concerned the more general question of whether a creditor may setoff an unmatured debt without regard to its amount. Concluding that the right existed, the courts then looked to the accelerating effect of the petition on the unmatured "claim," and decided that the amount subject to the setoff was the entire accelerated amount of the claim.[6] It does not appear from the opinions that the question of discounting or present value ever came up.

Here, Nelson's general right to setoff his deferred compensation claim is not in dispute except to the extent that the terms of the Deferred Compensation Agreement prohibit setoff. Instead, the present quarrel revolves around the allowed amount of the claim whether for purposes of setoff or distribution. The foregoing authorities assumed that the right of setoff was co-extensive with the broad definition of "claim," but § 553(a) limits that right to the allowed amount of the claim. To the extent that these decisions hold otherwise, I am compelled to disagree.

### CONCLUSION

Nelson's motion for partial summary judgment is granted to the extent of allowing him to setoff the claim based on the stock grant, subject to a future determination of the amount of the setoff. His motion for partial summary judgment to setoff his deferred compensation claim is denied for the reasons stated on the rec-

ord, and the allowed amount of his deferred compensation claim must be discounted to its value as of the petition date. Finally, the trustee's motion for summary judgment on his eighth claim is granted, except that he cannot foreclose his security interest until the amount of Nelson's setoff claims has been resolved. The parties are directed to contact chambers to schedule a conference for the purpose of fixing a trial date on the remaining issues.

SO ORDERED.

---

6. I made the same error earlier in this case. Following the oral argument of the first motion, I opined that Nelson could setoff his entire deferred compensation claim based upon the Bankruptcy Code's broad definition of "claim." Concededly, the statement was *dicta* since I denied his motion for summary judgment on the deferred compensation claim, and the issue of the allowed amount of the claim was not placed before me. Nevertheless, having considered the case law cited by the parties and the text of § 502, I now conclude that Nelson can setoff no more than the allowed amount, *i.e.*, the discounted value of the deferred compensation claim.