This opinion is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------------

No. 2
Jose Marin, et al.,
        Plaintiffs,
        v.
Constitution Realty, LLC, et al.,
        Defendants.
Sheryl Menkes, Esq.,
        Non-Party Appellant,
        v.
David B. Golomb, Esq., et al.,
        Non-Party Respondents.


            Scott T. Horn, for nonparty-appellant.
            Brian J. Shoot, for nonparty-respondent Golomb.
            Jay L. T. Breakstone, for nonparty-respondent
Manheimer.


DiFIORE, Chief Judge:

        Plaintiffs Jose and Ada Marin obtained an $8 million settlement for serious injuries Jose Marin sustained when he fell approximately 40 feet while working on a building in Manhattan. This appeal concerns a fee dispute between plaintiffs' attorney-

- 1 -

of-record in that action, Sheryl Menkes, and two attorneys she engaged to assist her:  Jeffrey A. Manheimer and David B. Golomb. Based on the plain language of their respective fee-sharing agreements, we conclude that Manheimer is entitled to 20% of net attorneys' fees and Golomb is entitled to 12% of net attorneys' fees.  We therefore modify the Appellate Division order accordingly.

I.

A.

In February 2009, Menkes engaged Manheimer to act as co-counsel and provide advice in the action.[1]  Their written agreement provided that Manheimer would receive 20% of net attorneys' fees if the case settled before trial and 25% once jury selection commenced.  Neither attorney informed the clients of Manheimer's involvement, although Manheimer believed Menkes had done so.  The failure to inform the clients violated the former Code of Professional Responsibility DR 2-107 (a) (22 NYCRR 1200.12 [a]) and the current Rules of Professional Conduct (22 NYCRR 1200.0) rule 1.5 (g).[2]  In June 2009, the agreement was amended to specify that Manheimer would act solely in an advisory capacity and would "not contact the client[s], defendants[']

_____

[1] Barbara Manheimer appears in this action as Executrix of the Estate of Jeffrey Manheimer.

[2] The Rules of Professional Conduct replaced the Code of Responsibility as the governing rules for attorney conduct in New York effective April 1, 2009.

experts or the [c]ourt" without Menkes's permission.  The fee arrangement was unchanged.  In August 2009, Menkes wrote to Manheimer unilaterally discharging him and advising him that his portion of the fees would be determined on a quantum meruit basis.  Manheimer did not respond to Menkes; he did no further work on the case.

B.

In August 2012, Menkes obtained partial summary judgment on liability under Labor Law § 240 (1) on plaintiffs' behalf.  She later sought assistance from Golomb for an upcoming mediation -- scheduled for May 20, 2013 -- and a potential trial on damages.  In March 2013, Menkes and Golomb entered into a written agreement, which stated, in relevant part:[3]

> "I [Golomb] have agreed to review the file, provide whatever services are needed, with your and your office's assistance, to prepare it for the mediation and to handle the mediation.  For those services, I will be [sic] receive twelve (12%) percent of all attorneys' fees whenever the case is resolved, whether by settlement, verdict after trial or appeal, calculated after the attorneys have been reimbursed for all expenses laid out.  This percentage due shall become fixed and owed upon execution of this agreement.
>
> "If the case does not resolve at the mediation, presently scheduled for May 20, 2013, then I will be responsible, with your and your office's assistance as

_____

[3] Plaintiffs were notified of, and consented to, the arrangement between Menkes and Golomb.  At this time, Menkes also represented in the agreement that no other attorneys were participating in the fee.

requested, for preparing for trial and trying the case.  After such mediation, I will be entitled to forty (40%) percent of all attorneys' fees whenever the case is resolved, whether by settlement, verdict after trial or appeal, calculated after the attorneys have been reimbursed for all expenses laid out.  In the event this matter has to be tried, the total of all attorneys' fees to which I am entitled for all of the services set forth, including mediation, shall be forty (40%) percent of all attorneys' fees whenever the case is resolved, whether by settlement, verdict after trial or appeal, calculated after the attorneys have been reimbursed for all expenses laid out."

The mediation began on May 20, 2013 at 2:00 p.m. Although the parties' original settlement positions were approximately $17 million apart, by the time the session concluded at approximately 7:00 p.m., the gap was about $1.5 million.  Since the excess insurance carriers lacked authority to increase their offer at that time, the mediation session ended without a settlement agreement.  On May 22, 2013, and during the following week, the mediator maintained contact with both Golomb and the carriers.  On May 31, 2013, the mediator telephoned Golomb to convey a settlement offer of $8 million, which Golomb accepted on plaintiffs' behalf.  The final terms of the settlement agreement were memorialized in a June 5, 2013 letter.

## C.

Menkes moved for an order establishing Golomb's attorneys' fees at 12% of net attorneys' fees and, after Manheimer intervened, Menkes also moved for an order setting his

fees on a quantum meruit basis.  Manheimer and Golomb each cross-moved:  Manheimer to fix his fee at 20% of net attorneys' fees and Golomb, as relevant here, to fix his fee at 40% of net attorneys' fees.[4]

Supreme Court denied Menkes's motion and granted both cross motions.  As to Manheimer, Supreme Court held that both the February and June 2009 agreements unequivocally and unambiguously entitled Manheimer to 20% of net attorneys' fees.  Supreme Court rejected Menkes's argument that because plaintiffs were never notified of and never consented to Manheimer's role as co-counsel, the agreements were unenforceable.  As to Golomb, Supreme Court concluded that the plain language of the agreement provided that Golomb was entitled to 40% of net attorneys' fees because the case did not settle at the mediation session on May 20, 2013.

On appeal, the Appellate Division affirmed, with two Justices dissenting (128 AD3d 505 [1st Dept 2015]).  That Court unanimously agreed that Manheimer was entitled to 20% of net attorneys' fees (see id. at 512, 513).  With respect to Golomb, the Court concluded that the plain language of the agreement between Golomb and Menkes provided that Golomb was entitled to 40% of net attorneys' fees because: (1) the agreement referenced "'the mediation,' not the 'process' of mediation," (2) "the

---

[4] The balance of Golomb's cross motion is not before us on this appeal.

mediation" was defined as the one "'presently scheduled for May 20, 2013,'" and (3) nothing in the agreement "condition[ed] Golomb's entitlement to the higher fee upon his commencing or taking any steps to prepare for trial" (id. at 509).

Two dissenting Justices would have held that the plain language entitled Golomb to only 12% of the attorneys' fees, noting that "the mediation," as used in the first substantive paragraph of the agreement, was not limited to a single date or session and that the words "presently scheduled for May 20, 2013," were descriptive, not limiting, because they were placed between commas (id. at 515-516). According to the dissent, the Court's analysis failed to give weight to the language requiring Golomb to "'prepar[e] for trial and try[] the case'" in order to be entitled to the 40% fee (id. at 515).

Menkes appealed as of right pursuant to CPLR 5601 (a), which brings up for our review Menkes's agreements with both Manheimer and Golomb.

II.

We conclude that Menkes's agreements with Manheimer are enforceable and entitle Manheimer to 20% of net attorneys' fees.

Menkes's attempt to use the ethical rules as a sword to render unenforceable, as between the two attorneys, the agreements with Manheimer that she herself drafted is unavailing. Her failure to inform her clients of Manheimer's retention, while a serious ethical violation, does not allow her to avoid

otherwise enforceable contracts under the circumstances of this case (see Samuel v Druckman & Sinel, LLP, 12 NY3d 205, 210 [2009]).  As we have previously stated, "it ill becomes defendants, who are also bound by the Code of Professional Responsibility, to seek to avoid on 'ethical' grounds the obligations of an agreement to which they freely assented and from which they reaped the benefits" (Benjamin v Koeppel, 85 NY2d 549, 556 [1995] [citation omitted]).  This is particularly true here, where Menkes and Manheimer both failed to inform the clients about Manheimer's retention, Menkes led Manheimer to believe that the clients were so informed, and the clients themselves were not adversely affected by the ethical breach.

Menkes's remaining arguments with respect to Manheimer are either without merit or are not preserved for our review.

### III.

As to the agreement between Golomb and Menkes, general principles of contract interpretation control.  "[A]greements are construed in accord with the parties' intent" (Greenfield v Philles Records, 98 NY2d 562, 569 [2002] [citation omitted]).  The best evidence of that intent is the parties' writing (see id.).  "[A] contract should be 'read as a whole, . . . and if possible it will be so interpreted as to give effect to its general purpose'" (Beal Sav. Bank v Sommer, 8 NY3d 318, 324-325 [2007] [citation omitted]).  "[A] written agreement that is complete, clear and unambiguous on its face must be enforced

according to the plain meaning of its terms" (Greenfield, 98 NY2d
at 569).  Whether an agreement is ambiguous or unambiguous "is an
issue of law for the courts to decide" (id.).  Here, both parties
maintain that the agreement is unambiguous.

The plain language of Menkes's agreement with Golomb
entitles Golomb to 12% of net attorneys' fees if the matter
resolved through the mediation that was scheduled to begin, but
did not need to conclude, on May 20, 2013.  That is what occurred
here.

Two paragraphs of the agreement spell out the fee
arrangement.  The first states that Golomb will "provide whatever
services are needed . . . to prepare [the matter] for the
mediation and to handle the mediation."  "For those services,"
i.e., preparing for and handling the mediation, Golomb will
"receive twelve (12%) percent of all attorneys' fees whenever the
case is resolved."  No specific date or dates are mentioned for
the mediation.

The subsequent paragraph states that "[i]f the case
does not resolve at the mediation, presently scheduled for May
20, 2013, then [Golomb] will be responsible . . . for preparing
for trial and trying the case.  After such mediation, [Golomb]
will be entitled to forty (40%) percent of all attorneys' fees
whenever the case is resolved."  Although the agreement
references the date of May 20, 2013, the agreement does not
require that the mediation be concluded during a single-day

session.  Nor was the mediation limited to the specific date identified in the agreement; rather, the use of commas indicates that the date was merely descriptive of the mediation, and not intended to restrict the mediation to that date (see William Strunk Jr. & E.B. White, *The Elements of Style* 3-5 [4th ed 2000]).[5]  The agreement plainly contemplated the fact that many mediation efforts require multiple sessions or follow-up conversations before settlement can be achieved.

Moreover, the next sentence of the Golomb agreement reads "[i]n the event this matter has to be tried, the total of all attorneys' fees to which [Golomb will be] entitled for all of the services set forth, including mediation, shall be forty (40%) percent of all attorneys' fees whenever the case is resolved."  Thus, the clear intent of the agreement is that the 40% fee will be triggered only if the matter moves past mediation.

Here, the mediator and Golomb communicated in the days following the May 20 mediation session, with the mediator continuing to act as go-between.  Ten days after the session, the mediator communicated the final $8 million offer, which Golomb accepted.  Reading the agreement as a whole, the plain language of the agreement entitles Golomb to 12% of net attorneys' fees.

---

[5] The conflicting opinions below disagreed as to whether Menkes preserved her argument that the phrase "presently scheduled for May 20, 2013," offset by commas, was a descriptive term, rather than a limiting term (see 128 AD3d at 510, 516-517). We conclude that the argument is properly before us.

Accordingly, the order of the Appellate Division should be modified, without costs, in accordance with the opinion herein and, as so modified, affirmed.

*    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

Order modified, without costs, in accordance with the opinion herein and, as so modified, affirmed.  Opinion by Chief Judge DiFiore.  Judges Rivera, Abdus-Salaam, Stein, Fahey and Garcia concur.  Judge Wilson took no part.

Decided February 9, 2017