16-722(L)
New York University v. Galderma Laboratories, Inc.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 26th day of April, two thousand seventeen.

Present:     GUIDO CALABRESI,
             ROSEMARY S. POOLER,
             RICHARD C. WESLEY,
                     *Circuit Judges*.

_____

NEW YORK UNIVERSITY,

                     *Plaintiff-Appellee-Cross-Appellant*,

                 v.                                      16-722(L)
                                                         16-817(XAP)

GALDERMA LABORATORIES, INC.,

                     *Defendant-Appellant-Cross-Appellee*.

_____

Appearing for Appellant:     Charles A. Michael, Steptoe & Johnson LLP (Timothy C. Bickham, *on the brief*), Washington, DC.

Appearing for Appellee:      Andrew P. Zappia (Gregory J. Mascitti, *on the brief*), LeClairRyan, A Professional Corporation, Rochester, NY.

Appeal from the United States District Court for the Southern District of New York (Hellerstein, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED** in part, **VACATED** in part, and **REMANDED**.

Defendant-Appellant-Cross-Appellee Galderma Laboratories, Inc. ("Galderma") appeals the February 10, 2016 final judgment of the United States District Court for the Southern District of New York (Hellerstein, *J.*) granting Plaintiff-Appellee-Cross-Appellant New York University ("NYU") $3,533,189.14 in damages on NYU's claims for breach of contract arising out of a licensing agreement, as amended, between Galderma and NYU (the "Agreement") with respect to U.S. Patent Nos. 5,789,395 (the "'395 Patent") and 5,919,775 (the "'775 Patent") (collectively, the "Amin Patents") and dismissing NYU's remaining claims with prejudice. We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

"We review a district court's grant of summary judgment *de novo.*" *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 135 (2d Cir. 2013). We may affirm the district court's grant of summary judgment on "any basis that finds support in the record." *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015).

"Whether a contract is ambiguous in the first place presents a question of law." *Luitpold Pharm., Inc. v. Ed. Geistlich Söhne A.G. Für Chemische Industrie*, 784 F.3d 78, 88 (2d Cir. 2015). Under New York law, "[w]e analyze the ambiguity of a provision under the normal rules of contract interpretation: words and phrases should be given their plain meaning and a contract should be construed so as to give full meaning and effect to all of its provisions." *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 157 (2d Cir. 2016) (internal quotation marks omitted). In order to determine whether ambiguity exists, "effect and meaning must be given to every term of the contract, and reasonable effort must be made to harmonize all of its terms." *India.com, Inc. v. Dalal*, 412 F.3d 315, 323 (2d Cir. 2005) (brackets omitted). "No ambiguity exists where the contract language has a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion." *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co., N.A.*, 773 F.3d 110, 114 (2d Cir. 2014) (brackets omitted). "When the terms of a written contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract[.]" *Id.* "The best evidence of [the parties'] intent is the parties' writing." *Marin v. Constitution Realty, LLC*, 28 N.Y.3d 666, 673 (2017). "Only when a court finds ambiguity in the parties' written agreement may it look to extrinsic evidence to discern the parties' intent." *Luitpold Pharm., Inc.*, 784 F.3d at 87.

With respect to NYU's breach of contract claim for royalties, we hold the definition of "Licensed Products" in the Agreement is unambiguous. The definition requires that any 'Licensed Product" be covered by "a" claim of either of the Amin Patents. App'x at 196. Any argument with respect to the "whereas" statement indicating Oracea is a Licensed Product in the amendment to the Agreement is unavailing where, as here, the operative definition of a Licensed Product is not ambiguous. *See Aramony v. United Way of Am.*, 254 F.3d 403, 413 (2d Cir. 2001) ("[A]lthough a statement in a 'whereas' clause may be useful in interpreting an *ambiguous* operative clause in a contract, it cannot create any right beyond those arising from the operative

2

terms of the document." (emphasis added) (internal quotation marks omitted)). Instead, the "whereas" clause serves to convey the parties' intent that the amendment only controls so long as Oracea is a Licensed Product. *See Marin*, 28 N.Y.3d at 673 ("The best evidence of that intent is the parties' writing."). It would defy common sense to read the Agreement as covering Licensed Products through standard terms and a single non-Licensed Product, a product which, by definition, NYU has no rights over, through more stringent terms. We will not engage in such a constrained reading of the Agreement here.

The question thus becomes one of fact: Is Oracea a Licensed Product under the terms of the Agreement because it is covered by any claim of either of the Amin Patents? On this record, there is no basis for the district court to have concluded either that Oracea was or was not a Licensed Product. The August 26, 2011 opinion of the United States District Court for the District of Delaware only reviewed claims 1, 2, 4, 11, 13, 14 and 16 of the '395 Patent and claims 1, 2, 4, 5, and 9 of the '775 Patent in relation to the generic version of Oracea. *Research Found. of State Univ. of N.Y. v. Mylan Pharm. Inc.*, 809 F. Supp. 2d 296, 309-13, 325-29 (D. Del. 2011), *aff'd in part, vacated in part, and remanded*, 531 F. App'x 1008 (Fed. Cir. 2013). Although the District of Delaware found that the "bioequivalent" generic version of Oracea did not infringe upon any of those claims, if Oracea is covered by even one claim of the Amin Patents, Oracea may be a Licensed Product under the Agreement. Accordingly, we vacate the district court's grant of summary judgment on Claim I and remand for further proceedings consistent with this order, including discovery on the factual question of whether Oracea is covered by any of the claims in either of the Amin Patents.

With respect to NYU's breach of contract claim for costs and attorneys' fees of the Federal Circuit appeal, we hold that Section 13(b) of the Agreement is also unambiguous. Section 13(b) provides that Galderma will cover "any expense" incurred by NYU in the course of any "suit" that Galderma initially elects to bring. App'x at 206. "Suit" encompasses all stages of a legal proceeding until a final resolution—as per Black's Law Dictionary, "[i]n the legal sense, *suit* refers to an ongoing dispute at any stage, from the initial filing to the ultimate resolution." *Suit*, Black's Law Dictionary (10th ed. 2014) (italics in original). The broad language in the rest of Section 13(b) further supports this understanding as it indicates an intent that the requirement that Galderma reimburse NYU be all-encompassing. In addition, the requirements on Galderma when it elects to bring suit are not identical to the requirements on NYU when it elects to bring suit. With respect to Galderma's obligations under Section 13(b), the parties added additional language to stress that "*any expenses* of [NYU] *incurred in conjunction with* the prosecution of *such suit* or the settlement thereof[] *shall* be paid for *entirely* by [Galderma]." *Compare* App'x at 206 (emphasis added) *with* App'x at 207 (Section 13(d)). This additional language indicates that the parties recognized that it was more likely that NYU would want to continue to prosecute a suit after a negative judgment than would Galderma based on the parties' divergent interests in the subject matter of the Agreement, and therefore specifically stressed that Galderma's obligations to reimburse NYU continued notwithstanding. The definition of "Licensed Product" in the Agreement adds additional support to this Court's understanding of the unambiguous language of Section 13(b) because it indicates that the parties to the Agreement were cognizant of and specifically accounted for the possibility of an appeal being taken when drafting the Agreement. Reading the Agreement as a whole, it is evident that the parties intentionally drafted Section 13(b) of the Agreement to provide unambiguously that

Galderma would continue to fund any suit that it had commenced from the beginning until a final resolution from which no appeal could be taken. Accordingly, we affirm the order of the district court granting summary judgment to NYU against Galderma on NYU's breach of contract claim for costs and attorneys' fees associated with the appeal to the Federal Circuit of the District of Delaware's decision in the suit against Mylan as well as the fees associated with the eventual settlement of the suit against Mylan after its remand.

This Court reviews "*de novo* a district court's decision to dismiss a complaint pursuant to [Federal] Rule [of Civil Procedure] 12(b)(6), accepting all factual allegations as true and drawing all reasonable inferences in the plaintiff's favor." *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015).

"New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013) (ellipses omitted). "Therefore, when a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant." *Id.*

Here, NYU's claim for breach of the implied covenant of good faith and fair dealing is based upon the same underlying facts as both of NYU's breach of contract claims under Counts I and II of the complaint. Accordingly, we affirm the district court's dismissal of NYU's claim for breach of the implied covenant of good faith and fair dealing.

We have considered the remainder of the parties' arguments and find them to be without merit. Accordingly, the order of the district court hereby is AFFIRMED in part, VACATED in part, and REMANDED for further proceedings consistent with this order. Each side to bear its own costs.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

4