**16-2535 (L)**
*Utica Mut. Ins. Co. v. Clearwater Ins. Co.*

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

————————

August Term 2017

(Argued: October 18, 2017      Decided: September 25, 2018)

Docket Nos. 16-2535 (L), 16-2824 (XAP)

UTICA MUTUAL INSURANCE COMPANY,

*Plaintiff-Counter-Defendant – Appellant-Cross-Appellee*,

v.

CLEARWATER INSURANCE COMPANY,

*Defendant-Counter-Claimant – Appellee-Cross-Appellant.*

————————

Before:

KEARSE, CABRANES, and WESLEY, *Circuit Judges.*

————————

Utica Mutual Insurance Company and Clearwater Insurance Company both appeal from the district court's summary judgment orders regarding Clearwater's obligations to Utica under five facultative reinsurance policies. The United States District Court for the Northern District of New York (Sharpe, then-*C.J.*) granted

partial summary judgment to Clearwater, ruling that the reinsurance company need not pay expenses beyond the limit of liability in the reinsurance contracts. The district court later granted summary judgment to Utica, concluding that Clearwater was obligated to indemnify Utica according to Utica's reasonable and good-faith settlement of a coverage dispute with its insured.

On appeal, Utica argues that Clearwater's claim-related expenses should not be subject to the reinsurance contracts' limits of liability. On cross-appeal, Clearwater argues that it is not obligated to indemnify Utica according to Utica's coverage settlement with its insured because the reinsurance contracts do not obligate Clearwater to pay according to that settlement. Clearwater also argues that Utica's settlement allocation with its insured is, in any event, unreasonable.

We conclude that because Clearwater's obligations under the reinsurance contracts follow Utica's expense-supplemental obligations under the umbrella policies, Clearwater's liability is expense-supplemental. But we vacate and remand for the district court to determine whether this obligation encompasses certain expenses. We also vacate and remand on the cross-appeal because Utica has not demonstrated its entitlement to a judgment that Clearwater was bound to indemnify Utica according to Utica's settlement with its insured.

——————————

WILLIAM M. SNEED (Daniel R. Thies, *on the brief*), Sidley Austin LLP, Chicago, IL, *for Plaintiff – Appellant-Cross-Appellee.*

DAVID C. FREDERICK, Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C., Washington, D.C. (Jeremy S.B. Newman, Amelia I.P. Frenkel, Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C., Washington, D.C.; John F. Finnegan, Chadbourne & Parke LLP, New York, NY, *on the brief*), *for Defendant – Appellee-Cross-Appellant.*

——————————

2

WESLEY, *Circuit Judge*:

From the 1950s to the 1990s, Utica Mutual Insurance Company issued various liability insurance policies to Goulds Pumps, Inc. Clearwater Insurance Company reinsured several of these policies. The Utica-Goulds policies proved valuable to Goulds when it started receiving thousands of asbestos bodily-injury claims in the 1990s. The policies simultaneously proved costly to Utica, which had failed to include aggregate limits in certain years' policies. After Utica and Goulds reached a settlement agreement regarding Utica's liability under those policies lacking aggregate limits, Utica sued Clearwater seeking indemnification pursuant to its reinsurance contracts.

Utica now appeals from the district court's grant of Clearwater's partial motion for summary judgment on the scope of its coverage under the reinsurance contracts. Clearwater cross-appeals from the district court's grant of Utica's motion for summary judgment on Clearwater's liability under the Utica-Goulds settlement.

## BACKGROUND

### I. Insurance and Reinsurance Generally

This case involves several types of insurance with their own spheres of coverage; understanding them is essential to resolution of the case. Primary and excess insurers provide liability coverage. Primary insurance provides the first layer of coverage of an insured's liability or loss. *Ali v. Fed. Ins. Co.*, 719 F.3d 83, 90 (2d Cir. 2013); 1 Steven Plitt et al., Couch on Insurance § 1:4, at 12 (3d ed. 2009). Excess insurance provides the additional layer of coverage for an insured's losses exceeding the primary insurance policy's limits. *Ali*, 719 F.3d at 90. Umbrella policies blend primary and excess coverage by providing last-resort excess coverage as well as gap-filling primary coverage on claims not otherwise insured by primary policies. *See, e.g.*, *BASF AG v. Great Am. Assurance Co.*, 522 F.3d 813, 815 (7th Cir. 2008); Francis M. Gregory Jr. & Nicholas T. Christakos, *Primary, Excess and Reinsurance Problems in Large Loss Cases*, 59 Def. Counsel J. 540, 542 (1992). In this case, Utica Mutual Insurance Company provided both primary and umbrella policies to Goulds.

Insurers have insurance, too. Reinsurance occurs when a carrier (the "reinsurer") agrees to cover losses experienced by an insurer for certain covered

risks. Here, Clearwater Insurance Company[1] insured Utica (the "cedent" or "reinsured") against loss or liability arising from its policies with Goulds (the "insured"). *See generally Unigard Sec. Ins. Co. v. N. River Ins. Co.* (*Unigard*), 4 F.3d 1049, 1053 (2d Cir. 1993) (describing "the business of reinsurance"). These reinsurance contracts allow the reinsured to distribute its risk of loss among reinsurers. *Id.* There are two types of reinsurance contracts: facultative and treaty. A facultative reinsurer insures part or all of a single insurance policy, with underwriting occurring as to each reinsured policy. *Id.* at 1054; *N. River Ins. Co. v. CIGNA Reins. Co.* (*CIGNA*), 52 F.3d 1194, 1199 (3d Cir. 1995) ("[A] facultative reinsurer 'retains the faculty, or option, to accept or reject any risk.'" (quoting William G. Clark, *Facultative Reinsurance: Reinsuring Individual Policies*, *in Reinsurance* 117, 121 (Robert W. Strain ed., 1980)). A treaty reinsurer insures specified classes of a ceding insurer's policies. *Unigard*, 4 F.3d at 1054. All five of Clearwater's reinsurance policies at issue here are facultative.

Several types of clauses defining the resinsurer's obligations in relation to the obligations of the reinsured commonly appear in facultative resinsurance contracts. Three types are relevant to this case.

---

[1] Formerly Skandia America Reinsurance Corporation.

The standard *follow-the-form* or *following-form* clause ensures that the reinsurance contract covers the same risks as those covered in the reinsured insurance policy. It provides that all the terms and conditions of the reinsured insurance policy are incorporated by reference into the reinsurance contract, except insofar as the reinsurance and insurance contracts conflict. *CIGNA*, 52 F.3d at 1199; Graydon S. Staring & Dean Hansell, *Law of Reinsurance* § 12:5, 258–63 (2017) (explaining that differences in premiums, limits, and period are the most common exceptions to congruence).

Some reinsurance contracts also contain what is called a *follow-the-settlements*, *following-settlements*, or *loss-settlement* clause.[2] When a reinsurance contract contains a follow-the-settlements clause, the reinsurer must indemnify the reinsured for losses settled reasonably and in good faith, even if the reinsured was not actually liable for those losses under the reinsured insurance policy. *See Travelers*, 419 F.3d at 189; *U.S. Fid. & Guar. Co.*, 20 N.Y.3d at 418–20. If the contract

---

[2] A "[f]ollow-the-settlements [obligation] . . . is [a] follow-the-fortunes [obligation] in the settlement context." *Travelers Cas. & Sur. Co. v. Gerling Glob. Reins. Corp. of Am.* (*Travelers*), 419 F.3d 181, 186 n.4 (2d Cir. 2005) (citation omitted). We use the term "follow the settlements" in this opinion in keeping with the context of Clearwater's alleged obligation to follow Utica's settlement with Goulds and the terminology used recently by New York courts. *See, e.g., U.S. Fid. & Guar. Co. v. Am. Re-Ins. Co.*, 20 N.Y.3d 407, 418 (2013).

does not contain a follow-the-settlements provision, the reinsurer must indemnify the reinsured only for the reinsured's *proven* liability under the reinsurance policy. That is, under a contract without a follow-the-settlements provision, "the reinsurer . . . is entitled to insist on proof"—meaning, ordinarily, a judgment—"of the reinsured's liability for loss paid." William Hoffman, *Facultative Reinsurance Contract Formation, Documentation, and Integration*, 38 Tort Trial & Ins. Prac. L.J. 763, 820–21 (2003).

*Claims-cooperation* clauses are variants of follow-the-settlement clauses. A claims-cooperation clause provides that the reinsurer must indemnify the reinsured for a claim settlement, but only if the reinsurer approved the settlement. *See Ins. Co. of Afr. v. SCOR (UK) Reins. Co.* [1985] 1 Lloyd's Rep. 312 (CA) 334 (Eng.).

## II.    Facts[3]

From the 1950s to the 1990s, Utica issued primary and umbrella insurance policies to Goulds, a pump manufacturer. The Goulds-Utica policies provide

---

[3] The background facts are not in dispute. *See Utica Mut. Ins. Co. v. Clearwater Ins. Co.* (*Utica I*), No. 6:13-CV-1178 GLS/TWD, 2014 WL 6610915 (N.D.N.Y. Nov. 20, 2014) (granting Clearwater's motion for partial summary judgment on liability cap); *Utica Mut. Ins. Co. v. Clearwater Ins. Co.*, No. 6:13-CV-1178 GLS/TWD, 2015 WL 4496374 (N.D.N.Y. July 23, 2015) (denying Utica's motion for reconsideration); *Utica Mut. Ins. Co. v. Clearwater Ins. Co.* (*Utica II*), No. 6:13-CV-1178 GLS/TWD, 2016 WL 254770 (N.D.N.Y. Jan. 20, 2016) (granting Utica's motion for summary judgment on follow-the-settlements

7

liability coverage pursuant to which Utica agreed both to defend Goulds in litigation and to indemnify it for liability claims resolved in settlement or judgment. The policies provide coverage for, among other things, asbestos personal-injury claims.

The primary policies Utica issued to Goulds from 1978 to 1981 had a glaring omission: they did not include aggregate limits of liability. In other words, the policies failed to specify the maximum amount Utica would pay Goulds. Because that maximum amount defined the limit of Utica's liability to Goulds under its primary policies, the omissions exposed Utica to potentially limitless liability.

The absence of a specific aggregate-liability limit became a problem for Utica. In the mid-1990s, Goulds experienced a rise in the number of claims alleging injuries from the asbestos in its products; litigation numbers ballooned over the better part of the next decade. By the early 2000s, Goulds and Utica had initiated actions against each other in California and New York seeking declarations regarding the parties' respective insurance-coverage obligations. Prompted in part

---

obligations and denying Clearwater's cross-motion for summary judgment on underlying policy's coverage of defense costs); *Utica Mut. Ins. Co. v. Clearwater Ins. Co.*, No. 6:13-CV-1178 GLS/TWD, 2016 WL 3906700 (N.D.N.Y. July 14, 2016) (damages calculations).

by Utica's staggering potential liability stemming from the policies' failure to define Utica's maximum exposure, Goulds and Utica settled in 2007. The settlement treated the primary policies as having aggregate limits. Utica began paying Goulds pursuant to their settlement.[4]

Once Utica's obligations to Goulds reached what Utica regarded as an amount sufficient to trigger its coverage under its reinsurance contracts, Utica turned to its reinsurers, including Clearwater, for indemnity. Clearwater had reinsured the 1978 and 1979 umbrella policies for Utica through two near-identical reinsurance certificates (the "Clearwater certificates"). Each Clearwater certificate lists "[Clearwater's] Liability and Basis of Acceptance" as a percentage share of specified "layer[s]" of the umbrella policies. Clearwater's liability totaled $5 million for the 1978 policy and $2.5 million for the 1979 policy. Clearwater also reinsured the 1979, 1980, and 1981 umbrella policies in three reinsurance contracts (the "TPF&C memoranda") by its participation in a pool of reinsurers then

---

[4] Although the Goulds-Utica litigation settled the parties' dispute over aggregate limits, Goulds and another Goulds insurer went to trial on that issue. California courts concluded that Utica's 1977–1982 primary policies had aggregate limits. *See Goulds Pumps, Inc. v. Travelers Cas. & Sur Co.*, No. B255439, 2016 WL 3564244, at *15–16 (Cal. Ct. App. June 22, 2016) (affirming ruling).

managed by Towers, Perrin, Forster & Crosby, Inc. ("TPF&C"). The limits of these five policies total $7,712,500 in coverage by Clearwater.

Clearwater paid nearly $1 million on Utica's reinsurance billings before stopping. According to Clearwater, the lack of aggregate limits on the primary policies meant that asbestos-related losses never reached—and therefore never triggered indemnity under—the reinsured umbrella policies. *See, e.g.*, Utica Resp. 14. Utica filed suit in 2013 seeking recovery for Clearwater's alleged breach of the five reinsurance contracts spanning 1978 to 1981; Clearwater denied liability and counter-sued for recovery of the amount already paid.

## DISCUSSION

"We review a district court's grant of summary judgment *de novo*." *Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 174 (2d Cir. 2014) (quoting *Gould v. Winstar Commc'ns, Inc.*, 692 F.3d 148, 157 (2d Cir. 2012)). "Where, as here, cross-motions for summary judgment are appealed, 'each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration.'" *Id.* (quoting *Morales v. Quintel Entm't Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)). Upon finding a contract ambiguous, we remand for a district court to make further findings. *See*

10

*U.S. Fire Ins. Co. v. Gen. Reins. Corp.*, 949 F.2d 569, 574 (2d Cir. 1991). The parties agree that New York law governs this diversity action.

### I.     Utica Appeal: Clearwater's Liability for Loss Expenses Under the Clearwater Certificates

At the outset of this litigation, Clearwater filed a motion for partial summary judgment seeking a declaration that any liability on the Clearwater certificates is capped at their stated liability limits ($5 million and $2.5 million for 1978 and 1979, respectively). Though the Clearwater certificates indemnify Utica for loss expenses, they do not clarify whether this expense liability is capped by the stated limits. The certificates state that "[u]pon receipt by [Clearwater] of satisfactory evidence of payment of a loss for which reinsurance is provided hereunder, [Clearwater] shall promptly reimburse [Utica] for its share of the loss and loss expense." Joint App. 66, 70. "Loss expense" is defined as "all expenses incurred in the investigation, adjustment, settlement or litigation of claims, awards or judgments." *Id.*

Clearwater argued that the certificates' liability limits were hard caps that precluded Utica from recovering defense costs and other expense payments beyond the limits. The district court granted Clearwater's motion, holding that the reinsurer's liability limit under the Clearwater certificates, if any, unambiguously

11

include expenses. *Utica I*, 2014 WL 6610915, at *5–6. On appeal, Utica argues that the district court erred in that regard because the Clearwater certificates are expense-supplemental—that is, they require Clearwater to cover all expenses in addition to Clearwater's accepted liability limit under the certificates. The question presented on appeal is, thus, whether the expenses Clearwater pays are capped at Clearwater's liability limit or must be paid in addition to it.

**A. Clearwater's Liability is Expense-Supplemental**

Principles of contract interpretation guide the way in determining Clearwater's liability for loss expenses. In *Global Reinsurance Corp. of America v. Century Indemnity Co.*, 30 N.Y.3d 508 (2017), the New York Court of Appeals answered a certified question from this Court on whether a liability limitation clause in a reinsurance contract necessarily imposes a rule of construction, or a related presumption, that a reinsurer's obligations are expense-inclusive. It ruled that "New York law does not impose either a rule, or a presumption, that a limitation on liability clause necessarily caps all obligations owed by a reinsurer, such as defense costs, without regard for the specific language employed therein." *Id.* at 519.

The New York Court of Appeals left it to trial courts to determine party intent "from the words used, taking into account, when the meaning is doubtful, the surrounding circumstances." *Id.* at 518 (quoting *London Assurance Corp. v. Thompson*, 170 N.Y. 94, 99 (1902)). "Like any contract, a facultative reinsurance contract 'that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms.'" *Id.* at 519 (quoting *Marin v. Constitution Realty, LLC*, 28 N.Y.3d 666, 673 (2017)). The court stressed that when the negotiated contract is between sophisticated parties (like Utica and Clearwater), "courts should be extremely reluctant to interpret an agreement as impliedly stating something." *Id.* at 518–19 (quoting *Vt. Teddy Bear Co. v. 538 Madison Realty Co.*, 1 N.Y.3d 470, 475 (2004)).[5]

Clearwater's certificates provide that it reinsures Utica "subject to the terms and General Conditions of th[e] certificate[s]." Joint App. 65, 69. Its reinsurance obligations therefore hinge on the certificates' terms and conditions. The certificates list Clearwater's "Liability and Basis of Acceptance" as $5 million and

---

[5] The New York Court of Appeals cited the district court's opinion in this case—*Utica I*, 2014 WL 6610915, at *3—as an example of a court improperly treating liability limits as unambiguously or presumptively imposing a cap. *Id.* at 516–17.

13

$2.5 million. *Id.* They also have boilerplate General Conditions addressing, among other topics, reinsurer liability. *Id.* at 66, 70.

General Condition 1 encompasses a "follow the form" clause. Clearwater's liability therefore must follow Utica's liability unless the insurance policies' terms and conditions are inconsistent with those of the reinsurance certificates:

> [Clearwater's] liability under this Casualty Facultative Reinsurance Certificate, . . . *shall follow* [Utica's] liability *in accordance with the terms and conditions of the policy reinsured hereunder* except with respect to those terms and/or conditions as may be inconsistent with the terms of this Certificate.

*Id.* (emphases added)**.**

The exception to this follow-the-form obligation, embedded in General Condition 1, is where the Clearwater certificates' terms and conditions are inconsistent with the underlying policy's expense-supplemental requirement. But here there are no such inconsistencies. Although the reinsurance certificates state that Clearwater's liability is $5 million and $2.5 million, they do not say, for example, that Clearwater reinsures Utica "subject to" the amount of liability. If they did, Clearwater's liability obligation would be expense-inclusive and would therefore be capped at $5 million and $2.5 million, including expenses. *See Unigard*, 4 F.3d at 1071 (finding a reinsurance contract was expense-inclusive where

14

certificate provided coverage "*subject to the* terms, conditions, *limits of liability*, and Certificate provisions" (first emphasis added, second in original)); *Bellefonte Reins. Co. v. Aetna Cas. & Sur. Co.*, 903 F.2d 910, 911 (2d Cir. 1990) (finding a reinsurance contract was expense-inclusive where certificate provided coverage "*subject to the* terms, conditions, and *amount of liability* set forth herein" (emphasis added)).

Further, the fact that the certificates state Clearwater's reinsurance liability limit has little significance on its own. Insurance companies generally do not offer limitless insurance, at least not on purpose. Under New York law, a naked "limitation on liability" or "reinsurance accepted" clause does not inherently cap the reinsurer's liability at that amount. *Glob. Reins. Co. of Am.*, 30 N.Y.3d at 519. Clearwater's liability limit, in other words, says nothing about whether that liability cap is expense-supplemental or inclusive.

The reinsured umbrella policies, in turn, provide:

> II. DEFENSE — DEFENSE COSTS — INVESTIGATION — ASSISTANCE AND COOPERATION
>
> With respect to any **occurrence** not covered by the policies listed in the schedule of underlying insurance or any other insurance collectible by the **insured**, but covered by the terms and conditions of this policy (including damages wholly or partly within the amount of the **retained limit**), the company [Utica] shall: . . .

15

(d) reimburse the **insured** for all reasonable expenses . . . ; the amounts so incurred . . . are payable by the company [Utica] i*n addition to the applicable limit of liability* of this policy.

Conf. App. 216 (bolded in original, italics added).[6]

The umbrella policies plainly require Utica to reimburse Goulds for "expenses . . . *in addition* to the applicable limit of liability of th[e] policy." *Id.* In light of the follow-the-form clause, Clearwater's obligations on the Clearwater certificates must track Utica's obligations on the underlying policies. Because the underlying policies are expense-supplemental, the Clearwater certificates likewise are expense-supplemental. Thus, when Clearwater is liable to pay expenses on its issued policies, it must pay those expenses in addition to the up to $5 million and $2.5 million of reinsurance liability accepted under the 1978 and 1979 reinsurance certificates, respectively. But that conclusion does not resolve the disagreement, which merely shifts from interpretation of the Clearwater certificates to interpretation of the umbrella policies.

---

[6] Some portions of the appendix have been filed under seal; they are hereby deemed unsealed to the extent that their contents are quoted or described in this opinion.

### B. The District Court Must Make Factual Findings to Determine Whether Clearwater Is Liable for Utica's Asbestos Claims Payments

Because Clearwater is liable only for loss expenses insured under Utica's umbrella policies, we must determine Utica's liability under those policies. Utica's umbrella policies cover expenses "not covered by" primary or other insurance: Utica must pay expenses beyond the liability limit only "[w]ith respect to any occurrence *not covered by* the policies listed in the schedule of underlying insurance." *Id.*

Clearwater argues that "not covered by" means not within the scope of coverage. Clearwater Br. at 63. It reasons that because asbestos liabilities were covered by primary insurance, the umbrella policies were not triggered, and Utica (and therefore Clearwater) was not required to pay expenses in addition to the liability limit for asbestos claims. Utica argues that "not covered by" means not collected under. Utica Rep. Br. 55–56. According to Utica, this language merely specifies that Utica pays expenses beyond the liability limit only for asbestos liabilities arising upon exhaustion of the primary policies. *Id.*

The district court has not decided whether expenses stemming from Goulds's asbestos-related claims fall into this "not covered by" category. *Utica II*,

2016 WL 254770, at *7 (reasoning that "[w]hether the exhaustion of Utica's primary policies satisfies the requirement that the policyholder be 'not covered' for umbrella coverage purposes is immaterial," given that Utica's interpretation of its policy was entitled to deference under a purported follow-the-settlements "doctrine").[7] But this determination is critical. Follow-the-form clauses achieve congruity of policies, and thus expense liability, between the reinsurer and its reinsured; the clauses do not amplify a reinsurer's liability beyond that of the reinsured. If Utica's umbrella policies do not insure asbestos-related expenses, then Clearwater's reinsurance certificates do not either.

Utica argues that this Court should avoid the interpretive disagreement and simply defer to its interpretation, as policyholder, based on its position that the policy contains a follow-the-settlements clause. However, as we set out in our discussion of Clearwater's alleged follow-the-settlements obligation, *see infra* section II.A, there is no default rule of reinsurance contracts requiring a reinsurer to indemnify a reinsured's settlement. Rather, deference to the reinsured's interpretation of its policies applies only when the reinsurer is contractually

---

[7] Clearwater does not challenge the district court's earlier denial of partial summary judgment on this issue.

18

obligated to follow the reinsured's settlements. *See Am. Ins. Co. v. N. Am. Co. for Prop. & Cas. Inc.*, 697 F.2d 79, 81 (2d Cir. 1982) ("In some cases in which there is genuine ambiguity over what a settlement covers, a 'follow the fortunes' clause may oblige a reinsurer to contribute to a settlement even though it might encompass excluded items."). And, as we explain below, Clearwater is not obligated under either the TPF&C memoranda or the Clearwater certificates to indemnify Utica for its settlement with Goulds.

The district court must therefore resolve in the first instance whether Utica's underlying policies obligate Utica to pay asbestos-related costs.[8] Although the umbrella policies are expense-supplemental, and the reinsurance policies must follow form in accordance with those policies, whether Utica is obligated under its umbrella policies to pay expenses for asbestos-related claims depends on the meaning of "not covered by." Accordingly, we vacate the district court's grant of

---

[8] If the district court were to find both interpretations of "not covered" reasonable on their face, the court might need to explore the facultative reinsurance industry's usage of that language in resolving its meaning. *See Garza v. Marine Transp. Lines, Inc.*, 861 F.2d 23, 27 (2d Cir. 1988) (explaining that courts may consider "customs, practices, usages and terminology as generally understood in the particular trade or business" (quoting *Walk-In Med. Ctrs., Inc. v. Breuer Capital Corp.*, 818 F.2d 260, 263 (2d Cir. 1987)).

partial summary judgment for Clearwater and remand for the district court to determine the meaning of "not covered by."

## II. Clearwater Cross-Appeal: The Reinsurance Contracts Do Not Bind Clearwater to Utica's Settlements Decisions

The cross-appeal concerns Clearwater's obligations under the TPF&C memoranda and the Clearwater certificates to reimburse Utica for its voluntary settlement with Goulds. Below, Utica filed a motion for summary judgment, arguing that Clearwater was obligated to pay on the Goulds-Utica settlement pursuant to its purported follow-the-settlements obligation. Clearwater responded that, absent an express clause, the court could not infer a follow-the-settlements clause, and even if the court were to find such a clause in the policy at issue here, Utica's settlement allocation (and therefore Clearwater's liability) was unreasonable. Clearwater also countered with a motion for partial summary judgment seeking a declaration on its liability, arguing that even if it were bound to Utica's settlement, it would not be required to pay for expenses Utica incurred while defending Goulds's claims, which Clearwater contended Utica paid gratuitously.

The district court agreed with Utica that its settlement allocation was reasonable and in good faith, summarily rejecting Clearwater's argument that it was not bound to Utica's settlements under either the TPF&C memoranda or the Clearwater certificates. *Utica II*, 2016 WL 254770, at *3–5 and & n.5. As to Clearwater's argument that it had no obligation under the umbrella policies to pay defense costs, the court determined the umbrella policies' coverage by deferring to Utica's interpretation of its umbrella policies as requiring it to pay defense costs to Goulds—and, accordingly, requiring Clearwater to pay expenses to Utica. *Id.* at *7 (invoking follow-the-settlements obligation).

Contrary to the district court, we conclude that Utica did not establish Clearwater's obligations to pay on Utica's settlement with Goulds on either the TPF&C memoranda or the Clearwater certificates.

### A. The TPF&C Memoranda Do Not Impose a Follow-the-Settlements Obligation

The TPF&C memoranda provide: "All claims settlements when authorized by [TPF&C], shall be binding on the Reinsurers . . . ."[9] Joint App. 714, 716.

---

[9] The parties refer to this clause as a follow-the-settlements, or follow-the-fortunes, clause. However, this reference is not entirely accurate. A follow-the-settlements clause binds reinsurers to the insurer's decision of claim adjustment or settlement, so long as it is reasonable and made in good faith. *N. River Ins. Co. v. ACE Am. Reins. Co.* (*North River*),

Clearwater argues that because Utica never sought or received TPF&C's authorization before settling, Clearwater was not bound to Utica's settlement. Utica responds that it was excused from complying with the obligation to get authorization from TPF&C because doing so would have been an impossible task. According to Utica, it was excused from obtaining authorization because TPF&C stopped managing the reinsurance pool decades before Utica could have sought authorization, and TPF&C's decision to stop managing the pool is attributable to Clearwater.

### 1. Utica Failed to Satisfy a Condition Precedent to Clearwater's Responsibility to Indemnify the Goulds Settlement

The parties agree that the authorization language imposes a condition precedent to a reinsurer's liability for settlement payments. "A condition precedent is 'an act or event, other than a lapse of time, which, unless the condition

361 F.3d 134, 139 (2d Cir. 2004); 4B N.Y. Prac., Com. Litig. in N.Y. State Courts § 74:38 (4th ed. 2017). Because the clauses in the TPF&C memoranda reserve final say to the reinsurers, these clauses are more appropriately referred to as "claims cooperation" clauses. *See Ins. Co. of Afr.*, 1 Lloyd's Rep. at 334 (noting inconsistency between a follow-the-settlements clause and a "claims cooperation clause" because that the latter "requires that the insurers shall not make settlements without the approval of the reinsurers"); 7 New Appleman on Insurance Law Library Edition § 73.03(4) (Jeffrey E. Thomas et al. eds., 2017).

is excused, must occur before a duty to perform a promise in the agreement arises.'" *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 690 (1995) (quoting Joseph M. Perillo & John D. Calamari, Contracts § 11-2, at 438 (3d ed. 2013)); Restatement (Second) of Contracts § 224 (1981). Under New York law, the failure to satisfy a condition precedent "excuses performance by the other party whose performance is so conditioned." *Merritt Hill Vineyards Inc. v. Windy Heights Vineyard, Inc.*, 61 N.Y.2d 106, 113 (1984).

### 2. Utica's Failure to Satisfy the Condition Precedent Is Not Excused by Impossibility

Though New York law provides for the general defense of impossibility, the defense is a feeble means of forcing another's performance where conditions precedent go unmet. First, impossibility "excuses a party's performance only when the subject matter of the contract or the means of performance makes performance objectively impossible." *Kel Kim Corp. v. Cent. Mkts., Inc.*, 70 N.Y.2d 900, 902 (1987). Second, "it is generally true that if a condition precedent to a party's duty to perform does not occur, . . . *the party will be excused* from further performance under the contract *even when the nonoccurrence [of the condition] is itself excused as the result of impossibility or impracticability*." 4 Williston on Contracts § 43:14, at 673–74 (Richard A. Lord ed., 2013) (emphases added, footnotes omitted).

23

In other words, the party whose obligation to perform depends on the prior occurrence of a stated condition need not perform if the condition is not met—even if the condition is impossible to satisfy.

Clearwater need not perform even if it was impossible for Utica to get the requisite TPF&C approval. As an initial matter, Utica has not established that obtaining TPF&C's authorization was impossible. Utica offered no evidence that, for example, TPF&C no longer exists. And although there are at least two instances where impossibility requires that the other party perform notwithstanding the unfulfilled condition, neither applies here.

The first impossibility exception is where "the condition is of only minor importance, its happening is a mere technicality, and a forfeiture will result by insisting on its occurrence." *Id.* at 674; *see also* Restatement (Second) of Contracts § 227 cmt. b (defining forfeiture as denial of contractual obligee's compensation after substantial reliance). In that event, "the duty that was subject to the condition's occurrence will become absolute despite [the condition's] failure to occur." 14 Williston on Contracts, *supra*, § 43:14, at 674. The second impossibility exception is a nod toward equity: "[A] party to a contract cannot rely on the failure of another to perform a condition precedent where he has frustrated or prevented

the occurrence of the condition." *MHR Capital Partners LP v. Presstek, Inc.*, 12 N.Y.3d 640, 646 (2009) (internal quotation marks omitted); *see also In re Bankers Tr. Co.*, 450 F.3d 121, 127–28 (2d Cir. 2006) (per curiam); *Grad v. Roberts*, 14 N.Y.2d 70, 75 (1964) ("Persons invoking the aid of contracts are under implied obligations to exercise good faith not to frustrate the contracts into which they have entered."); Restatement (Second) of Contracts § 225 cmt. b ("[A condition] may be excused by prevention or hindrance of its occurrence through a breach of the duty of good faith and fair dealing.").

Utica failed to show that Clearwater was obliged to follow the settlement under the TPF&C memoranda, notwithstanding that Utica never got TPF&C's authorization before settling. Utica has established neither that (1) the condition is minor, a mere technicality, and would result in forfeiture, nor that (2) Clearwater hindered satisfaction of the condition. Although Utica argues that TPF&C's decision to step away from managing the insurance consortium is attributable to Clearwater, it fails to show that Clearwater played a part in TPF&C's decision.

Finally, Utica has not successfully converted the impossibility defense from a shield to a sword. That one party's performance of a condition is excused for impossibility does not necessarily mean the other party must perform. 14 Williston

25

on Contracts, *supra*, § 43:14, at 673–74. In other words, even if Utica had shown that obtaining TPF&C's authorization was impossible and thus excused, Utica also needed to establish that Clearwater's performance was not also excused by reason of the unrealized condition—the authorization for settlement.

Contrary to the lower court's conclusion, Utica did not establish its entitlement as a matter of law to have Clearwater pay according to the Goulds–Utica settlement.

### B. The Clearwater Certificates Do Not Impose a Follow-the-Settlements Obligation

The second issue raised on cross-appeal is whether, under the Clearwater certificates, Clearwater must reimburse Utica for its voluntary settlement with Goulds. Because the certificates did not contain an express follow-the-settlements obligation, and because no such obligation is implied in law, we conclude that Clearwater is not liable to Utica for payments in settlement.

#### 1. The Clearwater Certificates Do Not Contain Express Follow-the-Settlements Obligations

The Clearwater certificates contain the following language:

[Clearwater's] liability under this Casualty Facultative Reinsurance Certificate, ("Certificate") shall follow the ceding Company's [Utica's] liability in accordance with the terms and conditions of the policy

26

reinsured hereunder except with respect to those terms and/or conditions as may be inconsistent with the terms of this Certificate.

Joint App. 66, 70. Utica contends that this "liability" language imposes a follow-the-settlements obligation. Clearwater counters that the language is merely a follow-the-form clause.

We agree with Clearwater that the follow-the-liability language gives rise to a follow-the-form obligation. In considering an identical provision in a different reinsurance certificate, a New York appellate court found that the clause was not a follow-the-settlements clause, but rather a follow-the-form clause. *N.H. Ins. Co. v. Clearwater Ins. Co.*, 129 A.D.3d 99, 111–12 (N.Y. App. Div. 2015).[10] The court noted that "[t]he provision contains no reference to the cedent's voluntary handling of claims—absent are the words 'settlement,' 'compromise,' 'payment,' 'allowance,' and 'adjustment,' as well as any permutations of the foregoing and any words to similar effect." *Id.* at 111. According to the court, a follow-the-settlements clause would instead refer "in some way to the cedent's claims-handling decisions." *Id.*

---

[10] "[W]e consider the language of the state intermediate appellate courts to be helpful indicators of how the state's highest court would rule." *DiBella v. Hopkins*, 403 F.3d 102, 112 (2d Cir. 2005).

Our cases applying New York law have similarly construed follow-the-liability language as imposing a follow-the-form obligation. *See Unigard*, 4 F.3d at 1055 (labeling the following a follow-the-form clause: "[t]he liability of [the reinsurer] shall follow that of [the cedent company] and, except as otherwise provided by this Certificate, shall be subject in all respects to all the terms and conditions of [the cedent's] policy . . . ").[11] The same holds true here: the follow-the-liability language does not create an express follow-the-settlements obligation.

### 2. New York Courts Do Not Imply Follow-the-Settlements Obligations into Facultative Reinsurance Contracts

The New York Court of Appeals has not directly decided whether follow-the-settlements obligations are, as a matter of law, implied into reinsurance contracts. However, the court's repeated emphasis on plain language makes clear that we should not imply so significant a term into a contract negotiated between

---

[11] The weight of scholarly authority concludes that follow-the-liabilities clauses impose follow-the-form—not follow-the-settlements—obligations. *See, e.g.*, Hoffman, *Facultative Reinsurance*, *supra*, at 820 (distinguishing between "follow-the-settlement" clauses and "follow-the-liabilities" clauses, and explaining that the latter merely "state the traditional trigger of the reinsurer's indemnity, namely, the reinsured's liability for loss paid under its policy"); New Appleman, *supra* note 9, § 74.02(1)(c) (describing the following as a follow-the-form clause: "[t]he liability of (reinsurer) shall follow that of (cedent) and except as otherwise specifically provided herein, shall be subject in all respects to the terms and conditions of (cedent's) policy").

sophisticated parties. *See Glob. Reins. Corp. of Am.*, 30 N.Y.3d at 518–19 ("[W]here an agreement is 'negotiated between sophisticated, counseled business people negotiating at arm's length, . . . courts should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include.'" (quoting *Vt. Teddy Bear*, 1 N.Y.3d at 475)); *Wallace v. 600 Partners Co.*, 86 N.Y.2d 543, 548 (1995) (same).

Though Utica points to, and the district court relied on, this Court's decision in *North River* as support for its argument that follow-the-settlements obligations are implied into reinsurance contracts, we find Utica's argument unpersuasive. In *North River* we held that a reinsurer was liable for an insurer's post-settlement allocation pursuant to an *express* follow-the-settlements obligation. *North River*, 361 F.3d at 139–42. The *North River* parties did not dispute that the reinsurance contracts at issue contained express follow-the-settlements clauses. *See id.* at 142. ("[A]ll claims involving this reinsurance, when settled by the Company shall be binding on the Reinsurer, which shall be bound to pay its proportion of such settlements . . . ."). Thus, the *North River* Court had no need to decide if follow-the-settlements obligations arose by implication; the case's discussion in that regard is *dictum*.

Having determined that the Clearwater certificates, by their express terms, do not include a follow-the-settlement obligation, *see supra* II.B.1, we see no reason to read such a term into the contract by implication. Instead we follow the New York Court of Appeals' instruction: where a contract "is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its own personal notions of fairness and equity." *Glob. Reins. Co. of Am.*, 30 N.Y.3d at 519 (internal quotation marks omitted); *see also* Graydon S. Staring & Dean Hansell, Law of Reinsurance § 18:2, at 423 (2017) ("[E]arly scholarship . . . , the best of modern scholarship, the judicial history of the subject . . . and the general law of contractual indemnity unite in confirming that there is no implied general obligation to follow settlements in the absence of an express clause to that purpose." (footnote omitted)). We therefore decline to impose by implication a follow-the-settlement obligation.

### 3. Clearwater Must Indemnify Utica According to Utica's Liability on the Umbrella Policies

We hold as a matter of law that Clearwater is not obligated under either the memoranda or the certificates to follow Utica's settlement with Goulds, but rather must indemnify Utica according to Utica's proven liability on the umbrella policies. *See* Staring & Hansell, *supra*, § 20:6, at 534 ("In the absence of a following

30

settlements clause, . . . the reinsured has the burden of proving that the loss was specifically caused by a risk covered in the reinsurance contract."); William Hoffman, *On the Use and Abuse of Custom and Usage in Reinsurance Contracts*, 33 Tort & Ins. L.J. 1, 70 (1997) (same). We accordingly vacate the district court's grant of summary judgment for Utica and remand for trial to determine Clearwater's actual liability to Utica under both the TPF&C memoranda and the Clearwater certificates.

## CONCLUSION

For the reasons stated above, we VACATE the judgment of the district court as to the appeal and REMAND for the district court to determine whether Clearwater's obligations under the reinsurance contracts encompass asbestos-related claims. We also VACATE the judgment of the district court as to the cross-appeal and REMAND for the district court to determine indemnification that Clearwater owes to Utica under (1) the TPF&C memoranda and (2) the Clearwater certificates on the basis of Utica's proven liability under its umbrella policies issued to Goulds.